JAMES A. BINGHAM

*v.*

WILLIAM C. BROWNING.

*Opinion filed June 19, 1902.*

1. CONTRACTS—*when sum named in a contract cannot be treated as liquidated.* If there is a controversy between the parties to a written contract and the balance due is fairly in dispute, the claim can not be treated as liquidated merely because a certain sum is mentioned in the contract.

2. SAME—*when receipt of money operates as an accord and satisfaction.* Where a contract for the sale of a party's interest in a business is for the payment of a definite sum of money and the cancellation of the seller's indebtedness to the firm, if a dispute arises as to whether certain sums of money were drawn from the firm by the seller before or after the contract took effect, the latter's receipt of the amount claimed by the purchaser to be due after deducting the sums withdrawn, which is offered by the purchaser upon condition that if taken at all it must be in full satisfaction, operates as an accord and satisfaction and bars a recovery in a subsequent suit for the amount held out in the settlement.

*Bingham* v. *Browning*, 97 Ill. App. 442, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. W. BURKE, Judge, presiding.

This was a suit in attachment, begun in the circuit court of Cook county by appellant, against appellee. The defendant filed a number of pleas, on which issue was taken, and the cause was submitted for trial to the court without a jury. The court found the issues for the defendant and rendered judgment accordingly, and upon appeal to the Appellate Court the same was affirmed.

The parties made the following stipulation, which was read in evidence on the trial:

"That on and prior to July 12, 1898, the firm of Henry W. King & Co. was doing business in the city of Chicago, consisting of eight or nine partners; that the plaintiff and defendant were members of the said firm; that E. W.

Dewey came to Chicago in June, 1898, as the agent of the defendant; that as the agent of the defendant the said Dewey asked the plaintiff to submit to the defendant a proposition on which the plaintiff would sell out to the defendant all his interest in the said co-partnership; that thereupon, about the middle of June, 1898, the said Bingham submitted to said Dewey a proposition, which was unsigned; * * * that upon receiving the same the said Dewey, without any action thereon, took the same to New York to submit the matters to said defendant; that afterwards, on July 12, 1898, on said Dewey's return to Chicago from New York, after seeing said defendant, the said Dewey, acting for and on behalf of said defendant, presented to the plaintiff, at Chicago, in said county, a paper in writing, which is below herein set forth, and on behalf of defendant proposed to plaintiff that the plaintiff and the defendant make and enter into that agreement, to which the plaintiff thereupon assented, and the said plaintiff, and the defendant, by said Dewey, his attorney in fact, on the day and year last mentioned, at Chicago aforesaid, executed and delivered the said agreement in duplicate form, as so proposed by the said Dewey, which agreement was in the words and figures following, that is to say:

"'Agreement made this first day of July, A. D. 1898, between James A. Bingham, of Chicago, party of the first part, and William C. Browning, of New York, party of the second part:

"'The parties hereto, each in consideration of the covenants and agreements of the other hereinafter expressed, do mutually covenant and agree to and with one another as follows, that is to say:

"'*First*—The first party, in consideration of the sum of seventy-five thousand dollars ($75,000), payable as hereinafter stated, and of the release, cancellation and discharge of all indebtedness of the first party to the co-partnership of Browning, King & Co. and Henry W.

King & Co., whether in the shape of promissory notes or other obligations, or open book accounts, hereby sells, assigns, transfers and conveys unto the said second party all right, title and interest of the first party in and to the capital stock of said co-partnership of Browning, King & Co. and Henry W. King & Co., and all interest in the fixtures, furniture, good will, and any and all assets and property of every description whatever, belonging to and owned by said co-partnership, and all the interest of the first party in and under the certain articles of co-partnership between the members of said co-partnership of date January 1, 1895, and in and to any and all assets and property therein mentioned.

"'*Second*—Said second party agrees to pay said first party the sum of $75,000 in the manner following, to-wit: Ten thousand dollars ($10,000) in cash, the receipt whereof is hereby acknowledged, and sixty-five thousand dollars ($65,000) thirty (30) days after demand therefor by the first party, with interest thereon from July 1, 1898, at the rate of five percentum (5%) per annum, said sixty-five thousand dollars ($65,000) to be payable at all events on or before July 1, 1899. Said second party also undertakes and agrees to procure, cancel and deliver to the said first party any promissory note or other written obligation of said first party to said co-partnership of Browning, King & Co. and Henry W. King & Co., and also to deliver to said first party a receipt and release in full for any and all obligations, or any amount on open book account due from said first party to the said co-partnership.' * * *

"And at the same time with the execution of said agreement the said Dewey, on behalf of defendant, on said July 12, 1898, paid to plaintiff the sum of $10,000, the receipt of which by the plaintiff is acknowledged in said agreement; that on July 7, 1898, and on divers days theretofore, and after the time when said Bingham presented said statement to said Dewey about the middle of

June, 1898, the said Bingham drew from the moneys of the co-partnership divers sums of money, amounting in the aggregate to the sum of $2000, which sums were at first carried by the book-keeper on tickets, and the said aggregate amount of which, viz., $2000, was on said July 7, 1898, charged to plaintiff upon the books of account of said firm, and which amount was never re-paid the plaintiff, and that the same stood and remained to his debit on open book account upon the books of said firm thence until and on the 12th day of July, 1898, when the said written agreement was signed and delivered as aforesaid. There is no admission in this stipulation (other than is herein contained) as to the exact days upon which all the sums making up the said total of $2000 were drawn out by the plaintiff. Each party is left to offer such proof upon that point as he may see fit. That said plaintiff was indebted to said firm at the time he submitted said proposition to said Dewey, and thence until and at the time of making and delivering said agreement, on July 12, 1898, upon certain promissory note or notes theretofore given by him to the said firm; that after the execution of said contract sued upon in this action, and before December 1, 1898, the said defendant became the owner of all the assets of said co-partnership of Henry W. King & Co., and so remained up to the time of the institution of this suit; that the said plaintiff has never repaid to the co-partnership of Henry W. King & Co., or the defendant, or any one else, the said sum of two thousand dollars ($2000) obtained by him on July 7, 1898.

"The foregoing stipulation is upon the condition and agreement that either party may offer in evidence the foregoing stipulation, or any part thereof, and that upon its being so offered, the foregoing evidence, and each and every part thereof, shall remain and be and is subject to objections by the other party to its competency, materiality or relevancy, precisely as if proof of such respective facts, instead of the stipulation, were so offered upon the

trial, and that either party is at liberty, upon the trial, to introduce other evidence as he may be advised."

It was afterwards stipulated by the parties "that for the purpose of this trial it may be considered as proved that of the two thousand (2000) dollars which was charged to James A. Bingham on the books of Henry W. King & Co. on July 7, 1898, one hundred and twenty-five (125) dollars was drawn by the said Bingham from the moneys of the co-partnership of Henry W. King & Co. on July 1, 1898, and that eighteen hundred and seventy-five (1875) dollars, to make up the said aggregate sum of two thousand (2000) dollars, was drawn out by the said Bingham from the moneys of the co-partnership of Henry W. King & Co. on divers days after July 1, 1898, and prior to July 8, 1898."

The evidence shows that in November, 1898, Bingham notified Browning that he had made arrangements to use the balance of the money due him under the contract on January 1, 1899, whereupon Browning notified Bingham that he could send him the balance immediately by telegraph, if necessary, and on the 15th of December Browning wrote appellant as follows: "Will you please, upon receipt of this, send me a memorandum of your account as you figure it, and the balance I shall have to send you in a check to close up the matter January 1, 1899. I do this to check back my figures." To this letter Bingham, on December 24, 1898, replied: "On my return to the city yesterday I received your favor of November 30 and December 15. In reply to the first I will say that I have made arrangements to invest my money on January 1, and therefore do not wish it before that time. I don't quite understand your second letter, in which you ask for a memorandum of the amount due me, as it seems simple enough. The obligation of $75,000, reduced by cash payment of $10,000, would leave $65,000. Five per cent interest on this amount for six months, $1625, would leave a total due me of $66,625, which I think must be correct."

Appellee, under date of December 27, 1898, replied as follows: "I have your letter of December 24. I have also a statement of your account from Mr. Frank King. He says that on the 7th of July you drew $2000, which, of course, wants to be deducted from the payment; and now, as your settlement was made under date of July 1, I will forward the money to Mr. Frank King so that it will reach you Monday, January 2, and if you will please call upon him he will hand you the same." To this last letter, under date of December 29, 1898, the appellant replied: "Yours of December 27 received. I am surprised that you wish to deduct $2000 from the amount that you pay me, as it was understood between Mr. Dewey and myself that my personal account was not to be taken into consideration in the settlement when he was here, in June. He asked me to submit a proposition upon which I would settle with you and retire from the concern on the first of July. I told him that if I was to retain an interest in the business in the future I would settle on the same basis the balance of you did, but if not, I should want the original amount I put into the business when we made up the last partnership returned to me, which would only give me a living for my services for the past four years, which I felt I was entitled to. He returned there and submitted his proposition to you, and returned here about July 1. He did not accept the proposition and make a settlement with me until July 12, when a contract was signed, and I did not draw a dollar from the concern after that time. The $2000 referred to in your letter was a ticket. Mr. Benson was holding different amounts I had drawn previous to the time it was charged to me, and Frank King says he had told Mr. Dewey about this ticket at the time he made the settlement, and to me it does not seem fair or right to ask me to deduct this amount now."

Mr. Bingham, on January 2, 1899, called on Mr. Frank King, who was mentioned in Browning's letter of December 27, 1898, and who had charge of the closing up of the

business of the co-partnership and of the settling up of this matter for Mr. Browning, and asked Mr. King if he had received the money from Mr. Browning that morning. Mr. King offered Mr. Bingham the same check he had received from Mr. Browning, which was for the sum of $64,585.35. Plaintiff then testified that before accepting the money he consulted his attorney in regard to giving a receipt for it, and then went to Frank King and told him that he (witness) thought it was unfair, and objected to receiving that amount, and told him that he would like to receipt for the amount of money he received, and King told him that he (King) could not do that; that he would not pay the money without taking a receipt in full; and that as he (witness) had to use the money at that time he accepted and gave the receipt. He says this occurred January 2, 1899. Frank King, who had been a partner in the firm of Henry King & Co. until July, 1898, was at the time of the conversation testified to by plaintiff, acting as Mr. Browning's representative or agent in Chicago, Browning being a resident of New York City. Bingham further testified that he received from King $64,585.35; that what he claimed was $66,625, as mentioned in his letter of December 24, 1898; that the $2000 was deducted from what he claimed; that he drew nothing from the firm of Henry W. King & Co. after July 12, 1898. On cross-examination the witness admitted signing a receipt shown him, and testified that he received a New York draft for the money receipted for; that he got no premium on the draft and didn't state to Frank King that he had, and that he had never claimed that he had drawn all of the $2000 prior to July 1, 1898, but had claimed that he thought part of it had been drawn out prior to that date.

The foregoing was substantially all the plaintiff's evidence in chief. The defendant put in evidence the receipt, the signature to which had been admitted by the plaintiff. The receipt is as follows:

"CHICAGO, *December 31, 1898.*

"Received of Henry W. King & Co., and of William C. Browning, individually, the sum of ($64,585.35) sixty-four thousand five hundred and eighty-five and 35/100 dollars, being in full payment of all claims of any name or nature against the said firm of Henry W. King & Co. and Browning, King & Co., and William C. Browning, individually.          JAMES A. BINGHAM."

The defendant called as a witness E. W. Dewey, formerly partner in the firm of Henry W. King & Co., whose testimony is merely that about the middle of June, 1898, he came to Chicago as Mr. Browning's agent; that after he received Bingham's proposition he went to New York; returned to Chicago June 30; left Chicago again July 1; returned July 7 and had the contract contained in the stipulation prepared by an attorney.

Frank King, called by the defendant, testified that in December, 1898, he was acting as Mr. Browning's representative in Chicago; that he had three conversations with plaintiff, at witness' office, about this claim against Mr. Browning; that the first time he, plaintiff, showed witness a statement of Browning and said it was not right, —that he should receive $2000 more; that that amount had been drawn out before July 1; that witness told him that he did not know without looking up the books; that in a day or two after, Bingham again called on witness with Mr. Benson, cashier of Henry W. King & Co., to find the dates of the items composing the $2000; that witness got the check-book stubs, which Mr. Benson examined, and showed that the checks were drawn after July 1. Witness further testified that the next time plaintiff came in he said he had received a letter from Mr. Browning and wanted to know if witness had received a check from him, and witness told him he had, and offered it to him, and he declined to accept it, saying it was not right, and when witness asked him to sign the receipt he refused, when witness told him he did not know what his contract with Browning was, and that if he, plaintiff, de-

sired, he would write to Browning; that plaintiff came in the next day,—witness thinks in the morning,—and said he would accept the check, and witness handed him the receipt and he signed it, and said it made no difference whether he signed it or not; that witness remarked to him that New York exchange was at a premium, and he might take advantage of it; that afterwards witness met him and asked him if he had done anything with the check, and he said he had; that he had received $30 or $40 in exchange on it. On cross-examination the witness testified that when plaintiff told him the money was drawn out before July 1, Henry W. King & Co.'s books were in witness' possession and control; also, that he did not recollect whether plaintiff told him that he had advised with counsel as to signing the receipt.

Bingham, plaintiff, re-called on his own behalf, testified that the performance of his duties as partner in the firm of Henry W. King & Co. ceased on signing the contract, July 12, 1898. Frank King, re-called by defendant, testified that he sold his interest as a partner in the firm of Henry W. King & Co. July 1, 1898, to Mr. Browning; that he signed the contract with Browning July 11 or 12, and that it took effect July 1.

The case was submitted to the court and tried without the intervention of a jury. The record shows no propositions of law offered on behalf of appellee. Appellant offered six propositions of law, four of which, viz., 1, 3, 4 and 6, were held by the court as presented. The second and fifth were modified by the court by striking out the words italicized, and after being so modified were marked "held." The propositions are as follows:

2. "That the date of a contract under seal is the date of its delivery, and that as the instrument introduced in evidence in this case was in fact signed, sealed and delivered on July 12, 1898, then, *as a matter of law, its date was July 12, 1898, and* it took effect as a contract on and from said 12th day of July, 1898."

5. "The court holds, as a matter of law, that under the evidence in this case the payment of the sum of $64,-585.35 by defendant to the plaintiff does *not* constitute a bar to a recovery by the plaintiff in this suit."

1. "The court holds that if the evidence shows that at the time of the alleged release, interposed as a defense in this case, the defendant was indebted to the plaintiff in the sum of $65,000, with interest from July 12, 1898, and that said indebtedness was then due, and that the defendant made a payment to the plaintiff of $63,000 and interest, amounting, in the aggregate, to $64,585.35, or any sum less than the amount of said debt, and that the plaintiff then signed the receipt offered in evidence, then, as a matter of law, if no new or different consideration was given by the defendant to the plaintiff for the said release other than the said payment, said promise and release on the part of plaintiff was without consideration and void as to him, and he is not bound thereby."

3. "The court holds that if the defendant was on January 1, 1899, indebted to the plaintiff in the sum of $65,000, with interest thereon from July 12, 1898, the payment by the defendant to the plaintiff of the sum of $63,000, with interest, amounting, in the aggregate, to the sum of $64,585.35, or the payment of any sum less than the amount of said debt, would not, as a matter of law, be a consideration for the discharge by the plaintiff of the balance of said debt, and would not be binding upon the plaintiff as a discharge of the balance of said debt."

4. "The court holds, as a matter of law, that the payment of a smaller sum on the day, as the satisfaction of a larger liquidated sum, is only a satisfaction of so much of said sum, and does not prevent a recovery for the balance of said sum."

6. "The court holds that as the instrument introduced in evidence was in fact signed, sealed and delivered by the parties on July 12, 1898, then, as a matter of law, the

said instrument only became operative as a contract and binding upon the parties on and from said 12th day of July, 1898."

Peck, Miller & Starr, and E. J. Stevens, for appellant:

The date of a contract is not conclusive against the parties to it.    *School District* v. *Stilley*, 36 Ill. App. 133.

The time of the execution and delivery of a contract may be proved by parol evidence in opposition to the date it bears.  *Leeper* v. *Hersman*, 58 Ill. 218;  8 Am. & Eng. Ency. of Law, (N. S.) 733;  Bishop on Contracts, sec. 173.

The delivery of a contract under seal is what makes it operative.    Its date is the date of delivery.    The date appearing upon the instrument is immaterial.    *McMichael* v. *Carlyle*, 53 Wis. 504.

The receipt, not being under seal, did not operate as a release or discharge, as it was not based upon any sufficient consideration.  *Murphy* v. *Holleran*, 50 Ill. App. 594; *Kingsley* v. *Kingsley*, 20 Ill. 203;  *Miller* v. *Holden*, 18 Vt. 337; *Titsworth* v. *Hyde*, 54 Ill. 386.

The acceptance of a lesser sum on the day in satisfaction of a greater cannot be a satisfaction of the whole unless founded upon some new consideration, or unless there is an honest attempt to settle or compromise an unliquidated debt understandingly made.  *Hart* v. *Strong*, 183 Ill, 349;  *Hayes* v. *Insurance Co.* 125 id. 626;  *Railway Co.* v. *Rose*, 72 id. 186;  *Morrill* v. *Baggott*, 157 id. 240;  *Martin* v. *White*, 40 Ill. App. 281;  *Insurance Co.* v. *Detwiler*, 23 id. 659.

A liquidated debt is one agreed upon by the parties or fixed by operation of law.    2 Bouvier's Law Dict. 261; *Clark* v. *Dutton*, 69 Ill. 521.

Taking a smaller sum for a larger, in the case of an unliquidated debt, under protest and no release signed, is not a bar to a recovery of the balance.  *Railway Co.* v. *Smith*, 75 Ill. 496.

Bentley & Burling, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

By the fifth proposition as tendered to and requested of the trial court by the appellant, the court was asked to hold, "as a matter of law, the payment of the sum of $64,585.35 by defendant (appellee) to plaintiff does not constitute a bar to recovery by the plaintiff." This proposition the court modified, or rather reversed, by striking out the word "not" before the words "constitute a bar," so that the holding or proposition declared that the payment of said amount did constitute a bar to recovery by the plaintiff. The first question presented under the action of the court is whether it was error to refuse the proposition as tendered, but as the discussion of this proposition also involves the consideration of the propriety of the modification or change of the holding and giving it as changed, both will be considered together.

The contention of the appellant is, that the giving of this instruction raised a distinct question of law of the same kind as if, in the trial of a case before a jury, the court should instruct the jury to find for the defendant. Appellant says: "Indeed, if this proposition were given as an instruction to the jury it would entitle the defendant to a verdict. The words 'as a matter of law,' in this proposition, take the question out of the questions of fact, and if, as the learned counsel for appellee here contend, the determination of the question depended, not upon this matter of law but upon a question of fact, then the trial court clearly erred in holding this proposition." Appellee's position with reference to this fifth proposition is, that "this was properly refused as offered, because it is not a proposition of law at all. Whether the payment of $64,585.35 was a bar depended upon how much was due, on the circumstances under which it was paid, and upon the consideration of all the other evidence in the case. * * * The only questions of law are whether it was proper to modify these two propositions. The

other propositions of law were properly held at plaintiff's own request, and cover all the phases of the case."

As we view this instruction as given, it was, in effect, holding that under the law and the evidence the plaintiff (appellant) could not recover. There was no question but that the amount of money stated in the instruction was paid by appellee to appellant, and if the payment of that amount by appellee tó appellant constituted "a bar to a recovery by the plaintiff in this suit," then that was the end to the plaintiff's case. The giving of the instruction as asked by appellant would not necessarily have resulted in a verdict in his favor had the case been tried before a jury, because the question of the receipt and release might still have been regarded as sufficient to bar appellant's recovery; but the giving of the instruction as modified left no question, and simply held that the payment, which was not denied, did constitute a bar to the recovery. The question is then presented, was the giving of this instruction or holding error on the part of the trial court?

The declaration contained the common counts and a special count on the contract set forth in the statement. The pleas were the general issue, and special pleas setting up the payment of the sum mentioned in the holding and a release given by appellant upon said payment. With reference to the payment, appellant admits the receipt of the money and the giving of the release, but insists that in law that does not constitute a bar to his action, because, he contends, the amount due him was liquidated, and that the receipt of a lesser sum than the whole of a liquidated debt does not satisfy the debt or release the debtor. Appellee, on the other hand, insists that there was a controversy over the amount due appellant; that while the original contract was for $75,000, ($10,000 of which was paid in cash at the time of making it,) appellant, against the spirit and letter of the contract, withdrew $2000 from the firm of Browning, King

& Co. between the first and seventh of July, 1898; that the contract read as of July 1 and took effect on that day, and that any moneys drawn after that time by appellant were not included within the terms of the contract, and that appellee having succeeded to the assets of Browning, King & Co. he was entitled to a deduction of the $2000 thus improperly withdrawn by appellant; that at the time of the payment of the amount stated in the instruction or holding as constituting a bar to appellant's recovery, appellant and appellee were disputing over this amount of credit, and that appellant, with full knowledge of that fact, received the money stated in the instruction and executed his release, and that unless such release was obtained by fraud or duress it was a bar to appellant's suit.    Appellant did not deny the receipt of the amount stated in the instruction, nor did he deny that there was a dispute as to whether the $2000 drawn by him in July, 1898, should be credited on the purchase price; nor does he deny, but admits, that he gave the release offered in evidence, and places his whole reliance upon the proposition that the receipt of a part of a liquidated sum cannot be pleaded as the release of the whole. In this contention appellant does, and must necessarily, ignore the legal effect and the fact of the dispute with reference to this $2000 credit.    The mere fact that the original contract was in writing is not conclusive of the question that the damages or demand was a liquidated demand.    Practically all written obligations for the payment of money are for a specific sum or a sum that can be made specific by mere calculation, but when it comes to a demand of payment or adjustment of the debt, the obligor or payor may insist that he has paid more upon the debt than the holder has given him credit for, or is entitled to off-set or counter-demands, in any of which cases it could not be contended that because a specific sum was stated in the writing of one of the parties the claim was a liquidated one, and that any settlement be-

tween the parties, however fairly and understandingly made, by which a less sum was paid by the obligor in the writing than it called for, would not be a bar to the action of the holder of the writing, on the ground that the whole sum called for had not been paid. And in this case the question to be determined is not whether appellant might have recovered the full $65,000, and interest, from appellee upon the contract, but whether there was an honest dispute as to whether appellee was bound to pay the indebtedness of appellant to Henry W. King & Co. for moneys withdrawn between the first and seventh of July.

Upon a reading of the record we cannot escape the conclusion that there was an actual *bona fide* dispute between the parties as to the amount due appellant from appellee, and where there is a controversy and the balance due is fairly in dispute the claim cannot be treated as liquidated. "In such cases," said Brockes, J., in *Farmers' Bank of Amsterdam* v. *Blair*, 44 Barb. 652, "it is not admissible to go behind the settlement with a view to determine which of the parties was right. Compromises are to be encouraged because they promote peace, and when there is no fraud and the parties meet on equal terms and adjust their differences, the court will not overlook the compromise but will hold the parties concluded by the settlement." And this court said in *Lapp* v. *Smith*, 183 Ill. 179, quoting from *McDaniels* v. *Bank*, 29 Vt. 230: "When a party makes an offer of a certain sum to settle a claim, when the sum in controversy is open and unliquidated, and he attaches to his offer the condition that the same, if taken at all, must be received in full satisfaction of the claim in dispute, and the party receives the money, he takes it subject to the condition attached to it, and it will operate as an accord and satisfaction." *Ostrander* v. *Scott*, 161 Ill. 339; *Hayes* v. *Massachusetts Mutual Life Ins. Co.* 125 id. 626.

Holding, as we do, that this fifth proposition was in effect a peremptory holding in favor of appellee, and the

evidence showing, beyond controversy, that there was an actual, *bona fide* dispute between the parties, then the only remaining question to be determined is whether there was any evidence tending to show that the receipt offered in evidence was not the free and voluntary act of appellant; and it being conceded that the receipt was knowingly, freely and advisedly given, we are of opinion that the proposition was properly held.

The judgment will be affirmed.

*Judgment affirmed.*