Alice J. Smith, Appellee, v. Mutual Reserve Fund Life Association, Appellant.

Gen No. 13,869.

1. FRATERNAL BENEFIT SOCIETY—*when member bound by by-laws.* A member of an association who agrees in his application or policy to abide by and be bound by subsequently enacted by-laws, is bound by them unless they are unreasonable.

2. INSURANCE—*power to impose lien upon policy. Held,* that under the by-laws of a fraternal benefit society, the power to change by-laws or enact new ones was retained in the society, and that a by-law enacted pursuant to such authority, providing for a reserve or deficiency assessment was valid, and, likewise, that it was valid to make the amount of such assessment a lien against the policies subject thereto.

3. ACCORD AND SATISFACTION—*what constitutes.* A settlement of a claim predicated upon an insurance policy made for a less sum than the face thereof, constitutes an accord and satisfaction, where an honest difference of opinion existed with respect to the amount due and the settlement was effected upon the advice of counsel without any intervention of fraud.

4. RELEASE—*what constitutes, of claim upon benefit certificate.* The surrender of a benefit certificate ordinarily operates as a full release and discharge from liability thereon.

Assumpsit. Appeal from the Superior Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the October term, 1907. Reversed, with finding of fact. Opinion filed April 3, 1908.

Statement by the Court. Alice J. Smith, appellee, was the beneficiary in a life insurance policy for

$10,000 issued by the Northwestern Life Assurance Co. May 7, 1899, on the life of Frederick M. Smith, her husband, who died June 21, 1902.

The record shows that on September 1, 1900, the Northwestern Company went out of business, and by contract with the Mutual Reserve Fund Life Association, appellant, transferred its insurance to the latter, and thereby said Smith became insured by the appellant.

At the time of such transfer there was attached to the policy in question a certain lien certificate for $1,519.70 which reduced the amount payable on the policy to that extent, plus any interest thereon which might remain unpaid at the death of the insured. This lien was placed on the policy with the consent of the insured.

In the contract between the Northwestern Company and appellant by which the insurance was transferred to appellant it was provided as follows:

"And each member of said company accepting insurance in said association hereunder agrees to accept and recognize the right of the association to divide its members into classes and fix the amount and rate of premium, assessments or periodical calls for each class without reference to any other class, and to change the same from time to time as the experience of the corporation or of the members of any class so established may require, in accordance with the policies of insurance or certificates of membership and by-laws now in force in said association, or that may be hereafter enacted."

The by-laws of appellant adopted in 1888, and in force at the time the transfer of insurance was made, provided: "This constitution or by-laws may be revised or amended at any annual meeting of the association or at a special meeting of members called for that purpose, by a two-thirds vote of the members present in person or by proxy."

At the annual meeting of the appellant association

in January, 1901, the members of appellant adopted an amended constitution or by-laws which provides that the amount of any lien on a certificate or policy shall be retained from the amount due thereon; and also states the basis for the reserve upon all certificates or policies issued prior to January 1, 1901, and that:

" (Article VII, Sec. 2) If the net value of the funds of the Association, after providing for outstanding claims and other accrued liabilities, or of the accumulated funds of any class hereunder, is at any time less than the reserve required by this Constitution or By-Laws and its policy contracts of which the same form part, or by law, each certificate or policy (or each certificate or policy of said class, as the case may be) shall be chargeable with an amount limited to its equitable share of such deficiency in the general funds of the Association, or in any class wherein such deficiency may arise, as determined by the Actuary of the Association, as an interest bearing loan upon such reserve, as provided in Section 5 of this Article, constituting a lien against the insurance under each such certificate or policy, and any dividends or surplus accruing thereon, which lien may, at the election of the member or policy-holder, be paid in cash and cancelled.

Article VII, Sec. 3.  In order that all policy or certificate holders, or classes of  policy or  certificate holders, may share equitably and in accordance with mutual principles in the distribution and payment of the cost of the insurance granted them, and in the establishment and maintenance of the reserve now or hereafter to be provided for the protection of their insurance, any and all classes of policy or certificate holders (insured under plans upon which a reserve equal to or exceeding a whole life reserve is not now maintained) whose net contributions to the death fund of the Association for the purpose of paying death claims (being the payments made, less that portion thereof provided or used for expenses) the Actuary of the Association shall determine to have been less than the tabular mortality by the Actuaries' Table of Mortality, or any greater rate of mortality actually experienced by the Association in said classes, shall be, and from

the adoption hereof become, and be treated as, whole life continuous premium policies as of age and rate for the date of original entry; and each and every policy, matured or unmatured, belonging to any class as above described, is hereby charged with a lien against the insurance thereunder, or any dividends or values arising therefrom, equal to the full standard reserve to date under such an above-described whole life contract, determined by said Actuaries' Table with interest at four per cent. per annum, the same to bear interest at the annual rate currently charged upon loans to policy-holders upon the security of their insurance; and there shall be added to the said lien charge annually the sum by which the annual cash payments of the policy or certificate holder, called in accordance with the method heretofore governing said policies, or as may hereafter be determined by the Board of Directors may be less than the amount of the regular premium for the entry age by the Association's table of rates for whole life continuous premium policies based on said reserve standard plus said interest; or deducted from said lien charge annually the sum by which the payments made by said policy-holder, as above provided, may exceed said whole life rate for entry age, plus said interest. Any and all policies affected hereby shall henceforth be regarded as contracts of whole life insurance, and the insured thereunder shall, subject to the deduction of any lien or charge against the same, and only in the event of written demand prior to lapse, be entitled to the regular surrender values as computed by said Association for said policies upon the reserve standard above named, and said policies shall, in lieu of any or every method of participation in surplus now therein provided, be credited with their equitable proportion of the surplus of the Association (in excess of the reserve required by law or by contract) as hereafter determined by the Actuary of the Association annually, the same to be applied to the reduction of any lien charge against the policy, or otherwise as the Board of Directors may determine. And the Board of Directors is authorized and empowered to hereafter similarly

treat, in the manner and subject to the requirements and limitations above, or otherwise in its discretion, any class or classes of policy or certificate holders, or any part or portion of such class or classes (insured under plan upon which a reserve equal to or exceeding a whole life reserve is not maintained) whose payments to said Association, other than that portion thereof provided for or used for expenses, shall fall below either the tabular mortality by said Actuaries' table, or any greater rate of mortality actually experienced by said Association in said class or classes, or portion thereof."

There is evidence in the record tending to prove that the experience of the appellant showed that the risks transferred from the Northwestern Company to appellant were greatly impaired, and that the death rate among such members was far in excess of the normal death rate on which life insurance is calculated and based; and that very much more was going out to pay death losses than was coming in from premiums and assessments. According to a report of appellant's actuary made on February 18, 1901, this condition of affairs justly necessitated the treatment of these risks as constituting a class by themselves for the purpose of determining the cost of the protection had and the benefits derived therefrom; and that a "rating up" of the ages of such transferred members ought to be made to correspond with the actual mortality among them.

Thereupon the directors of appellant, after considering the actuary's report, took the following action under its constitution or by-laws, and the terms and provisions of the contract of re-insurance between the Northwestern Life Assurance Co. and appellant:

"A reserve deficiency assessment is hereby ordered to be made upon all members of said class, and that said reserve assessment for each certificate or policy shall be determined by the Actuaries' Table of Mortality with interest at four per cent. as of the rated age which has been determined by the Actuary of the Asso-

ciation as set forth in his report bearing date February 18, 1901, and in accordance with the rule laid down in said report shall be the excess of the reserve required on each certificate or policy on the basis of said rated age, over the reserve as determined by the corresponding age of issue, and that the amount of said assessment is now due and payable, but that such payment may be made at any time within thirty days from the date of notice in the case of each and every certificate, said thirty days being allowed as days of grace provided, however, that, in accordance with the provisions of Section 3, Article VII of the Constitution or By-Laws, the amount of this assessment be and hereby is charged as a lien against the insurance under each and every certificate or policy and any dividends or values arising therefrom, the amount to bear interest until paid at the annual rate of five per centum, which lien may be, at the election of the certificate or policy holder, at any time paid in cash and cancelled.''

The excess mortality thus attempted to be charged against the policy in suit amounted to $3,039.60. This amount with interest the court below held appellee was entitled to recover in this action, and gave judgment therefor.

The record shows that appellee demanded payment of the policy less the lien certificate for $1,519.70. Appellant claimed that it was not liable thereon because the deceased had broken his warranty not to use intoxicating liquors to excess; and even if it was liable there were certain deductions to be made for interest, premiums unpaid, and liens, which left the total amount due thereon, in any event, only the sum of $5,071.03.

Appellee first placed the matter in the hands of Mr. Anderson, an attorney, and the negotiations between him and appellant resulted in an offer to pay appellee $3,000 in settlement. Appellee declined the offer, took the matter out of Anderson's hands and retained A. A. Goodrich of the Chicago bar who took the matter up with a representative of appellant. After some negotiations appellant renewed the above offer to Mr. Goodrich, who declined it. Appellee then enlisted a

Mr. Gilman, Deputy Comptroller of New York state, who had been a friend of her husband. Mr. Gilman took up the claim with the officers of appellant in New York, and also co-operated with Mr. Goodrich. The result of these negotiations was an offer on the part of appellant to pay $5,071.03 in full settlement of all claims under the policy. This offer was accepted by appellee, and on November 17, 1902, appellant through its attorney gave appellee a sight draft for that amount as follows:

"$5,071.03.                 CHICAGO, ILL., Nov. 17, 1902.

At sight pay to the order of Alice J. Smith Five Thousand Seventy one & 03/100 Dollars in full payment and settlement of Policy No. 135593 issued to Frederick M. Smith, deceased, and charge the same to Mortuary Account.

GEO. J. KUEBLER,<br>as atty. for MUT. RESERVE LIFE<br>INS CO.

To Mutual Reserve Life Insurance Co."

And at the same time appellee delivered to Mr. Kuebler the following receipt:

"$5071.03.                 CHICAGO, Nov. 17, 1902.

Received of the Mutual Reserve Life Insurance Company, Five Thousand & seventy one & 3/100 Dollars (being ten thousand dollars, less the balance premiums current policy year, $203.70, less the interest $165.97, and less the liens $4559.30) in full for all claims under policy No. 135593 which becomes a liability against said company under the contract of transfer between the Mutual Reserve Fund Life Association and the Northwestern Life Assurance Company) issued on the life of Fred M. Smith (deceased).

ALICE J. SMITH,

Witness: Adams A. Goodrich.                 Widow."

Appellee at the same time delivered to the representative of appellant the policy mentioned in the above papers. She indorsed the draft and collected the money on it. She then brought this action on the policy. A jury was waived and the cause was submitted to the

court without a jury. The court found for the plaintiff and assessed the damages at $3,721.74 and entered judgment on the finding.

Newman, Northrup, Levinson & Becker and Chester E. Cleveland, for appellant; Sewell T. Tyng, of counsel.

Louis E. Hart and George H. Mason, for appellee.

Mr. Justice Smith delivered the opinion of the court.

The record presents two questions, the decisions of which control the disposition of the case: First, did appellant have the right to deduct from the amount of the policy the excess mortality lien; and, second, was there an accord and satisfaction between the parties?

Upon the question of the validity of the excess mortality lien or assessment the record shows that the deceased in his lifetime agreed with the Northwestern Company in the certificate of lien signed by him and dated October 28, 1899, that the $1,519.70, with any additional loan or charge, should "be a lien on the policy until paid." Further, it was provided in the policy itself that the reserve, according to the standard mentioned in the policy, should be maintained, either from premiums paid by the insured or a lien on the policy, and for that purpose the mortality element of the premium might be varied according to the mortality experience of the company.

When the Northwestern Company transferred the insurance to appellant, the latter accepted the members of the Northwestern Company upon their original applications and certificates of membership or policies and the conditions thereof. Among these conditions was a provision that such members should continue their insurance "by paying the premium calls of said association in accordance with its calls, rules and by-laws now in force or hereafter to be established, and in accordance with the conditions of this agreement."

The other provisions of this contract material to the consideration of the question now before us are set out in the statement preceding this opinion.

The contract between the companies was one which could be made only with the approval and ratification of the members of the Northwestern Company. (Section 16 of Assessment Insurance Act, Hurd's Revised Statutes 1905, p. 1219.) While the contract was made nominally between the companies, it was, in effect, made with the members of the Northwestern Company, on whose approval it became effective. Frederick M. Smith was therefore bound by it.

The action of appellant, and the grounds therefor, in ordering the reserve deficiency assessment based upon its experience with the transferred members, was not attacked on the trial upon the ground that the facts did not warrant the measure, nor is it here claimed to be invalid on that ground. But its invalidity is urged on behalf of appellee upon the ground that the deceased was not bound by by-laws adopted subsequently to the issuance of his policy; and even where the member agrees to comply with all subsequently enacted by-laws, such laws which have the effect to reduce the amount payable at his death on his policy are not binding and operative, for want of power to enact laws which shall work any repudiation of the contract.

With this contention of appellee we cannot concur. It is the settled law of this state that a member of an association who, like the deceased, agrees in his application or policy to abide by and be bound by subsequently adopted by-laws, is bound by them, unless they are unreasonable. Scow v. Royal League, 223 Ill. 32, and cases there cited. We do not think that the by-laws of appellant or the action of its directors in ordering the reserve deficiency assessment and making it a lien against the insurance under each certificate or policy, with the provision that it might be paid in cash and cancelled at the election of the policy holder, were unreasonable, or had the necessary effect to work

any repudiation of the contract of insurance. In our opinion, under the certificate or policy sued on, and the contract of reinsurance between the Northwestern Life Assurance Company and the appellant, the latter had the right and power to divide its members into classes and fix the amount and rate of premiums, assessments or periodical calls for each class without reference to any other class, and to change the same from time to time as its experience or that of any class so established might require, in accordance with the policies of insurance or certificates and by-laws then in force or that might be enacted thereafter; and to charge the so-called extra mortality lien against the policy of Frederick M. Smith to make up the deficiency in the payment of premiums or assessments paid by said Smith and the class of members to which he belonged. This lien was a valid charge against the policy, and there was therefore nothing due the appellee when this action was brought. This view of the law is sustained by the following authorities: Bolles v. Mutual Reserve, 220 Ill. 400; Scow v. Royal League, *supra;* Barrows v. Mutual Reserve, 151 Fed. Rep. 461; Gaut v. Mutual Reserve, 121 Fed. Rep. 406.

In so far as the propositions of law held applicable to the case by the trial court were contrary to his view of the law, they were erroneous. The propositions of law requested by appellant, but refused by the court, which held that appellant had the right and power to charge the so-called extra mortality lien against said policy, should have been held as the law of the case.

The material and substantial facts bearing upon the question of accord and satisfaction between the parties and the release of appellant from all liability on the policy in suit are set forth in the statement preceding this opinion. Assuming, for the sake of argument, that the excess mortality lien discussed above was not legally a charge against the policy, and that in the absence of the settlement made with appellant Novem-

ber 17, 1902, appellee would have a right to recover the amount of such lien, we are of the opinion, upon the facts shown in the record, that the settlement of November 17, 1902, was a perfect accord and satisfaction between the parties and a release of appellant from all liability on the certificate of membership or policy in suit.

There was an honest dispute between the parties as to the amount due on the policy. It cannot be said, under the provisions of the policy, and the contract by which appellant took over and assumed the insurance in question, and under the by-laws of the appellant, and considering its experience with the insurance so taken over from the Northwestern Company, that the making of the excess mortality assessment, and claiming it as a lien against the amount due on the policy, was without foundation in the contract or in equity, and fraudulent against appellee. It was a matter of honest difference and discussion on both sides of the controversy. In the discussion and negotiations which arose between the parties, appellee had the benefit of the advice and services of legal counsel, and also the friendly advice and assistance of Mr. Gilman, deputy comptroller of New York, who, after investigating the matter, wrote to appellee's counsel in Chicago, under date of November 11, 1902, and, after stating that the appellant was willing "to waive all other claims" and pay appellee $5,071.03 at once, further said: "From what I can see, the company is now doing all that was required of it under the contract entered into when they accepted these risks." The claim which appellant was then insisting upon and appellee was objecting to was, to put it moderately, a fair matter of discussion possessing some basis in law and equity. Consequently, the result of a litigation over it was involved in doubt. It must be held, we think, that appellee acted with full knowledge of all the facts, and with the advice of counsel, and that the settlement was fairly and deliberately made without fraud on

the part of appellant, either in misrepresentation of facts or concealment of the truth from appellee.

What, then, was the legal effect of the transaction of November 17, 1902? The draft accepted and cashed by appellee specified that the amount was "in full payment and settlement" of the policy. The receipt given by appellee at the time she received the draft says that the money was received "in full for all claims under policy." Appellee at the same time delivered to appellant the policy. These facts constitute, we think, a complete bar to any recovery on the policy.

In Simmons v. American Legion of Honor, 178 N. Y. 263, the court, in deciding a case which does not differ in any essential element from the case before us, said:

"Now it is the settled law of this state that if a debt or claim be disputed or contingent at the time of payment, the payment, when accepted, of a part of the whole debt, is a good satisfaction, and it matters not that there was no solid foundation for the dispute. The test in such cases is, Was the dispute honest or fraudulent? If honest, it affords the basis for an accord between the parties which the law favors, the execution of which is the satisfaction."

The rule of law stated in the above case is the settled rule in this state. Bingham v. Browning, 197 Ill. 122; Ostrander v. Scott, 161 id. 339; Canton Union Coal Co. v. Parlin, etc., Co., 215 id. 244.

The surrender of the certificate of membership or policy by appellee to appellant at the time of the receipt by her of the draft in full settlement of all claims thereunder, operated as a release and discharge of the liability thereon. Draper v. Hitt, 43 Vt. 439; Larkin v. Hardenbrook, 90 N. Y. 333; Grand Lodge Ill. Ind. Or. Mut. Aid v. Peiffer, 129 Ill. App. 208.

We think the court erred in refusing to hold the propositions of law requested by appellant upon this subject.

The judgment is reversed, with a finding of fact.

*Reversed, with finding of fact.*