THE STATE, LUCY KEAN, PROSECUTRIX, v. THE CITY OF
ELIZABETH.

1. The common council of the city of Elizabeth had the power by ordi-
nances passed in 1891 to vacate a portion of York street, said street
having been laid out by the common council, and not by the board of
commissioners to lay out streets.

2. A person owning lands upon a part of said street not vacated, is not de-
prived of any vested rights in property for which she is entitled to
compensation, by reason of said vacation.

3. The fact that one of the reasons for vacating that portion of the street
was to accommodate a person over whose lands the vacated portion ran
does not invalidate the ordinances.

On *certiorari.*

There are two writs of *certiorari,* each bringing into this
court an ordinance passed by the common council of the city
of Elizabeth vacating a portion of York street in said city.

The first ordinance by its terms vacates and closes all that
portion of York street from the most easterly line of the
Newark branch of the Central railroad to the westerly side
of Second street, if extended across York street.

The second ordinance vacates York street from the westerly
line of Second street eastwardly to Newark bay.

The first of these ordinances was approved February 5th,
1891, and the second was passed May 1st, 1891.

Argued at February Term, 1892, before JUSTICES DIXON,
REED and GARRISON.

For the prosecutrix, *Richard V. Lindabury.*

For the defendants, *Joseph Cross.*

The opinion of the court was delivered by

REED, J.   The questions involved by the returns to each
of these writs are identical.   They were argued and will be
decided as one.

The material reasons assigned for a reversal of the action of the common council are two. *First,* that no power existed in the common council to vacate this street ; *second,* that if that body had such power, such power could not be exercised with-out compensating the prosecutrix for the destruction of vested property rights.

The following is the course taken by the city in laying out York street :

By an ordinance passed in 1866, with all due formality, to open this street.

After the passage of this ordinance, no steps were taken, so far as appears, to assess damages and benefits on account of such opening.

At this time the common council had, under the charter of the city of Elizabeth, full authority to lay out and vacate any street in the said city.

That body was deprived of this power for a period by an act passed March 13th, 1867. By the terms of this act this power was put exclusively in a board of commissioners. This board was empowered to cause maps of the streets laid out or altered to be filed in the city clerk's office, with notes and explana-tions. On March 31st, 1869, a repealing act was passed, but with a provision that the previous action of the board in respect to the establishment and alteration of streets should be conclusive, unless altered by common council before a certain date. This repeal restored to common council the power to open streets. *State Central Railroad Company* v. *Elizabeth, 8 Vroom* 432, &c.

After the passage of the repealing act in March, 1869, the common council passed, on July 14th, 1869, another ordinance laying out York street as it had been laid out by the ordinance of 1866.

So that, recognizing either of these ordinances as valid, the city council had exercised its authority to lay out York street at times when that authority resided in the common council.

Nor is there any force in the view that York street had been already laid out by the board of commissioners when the ordi-

nance of 1869 was passed. It is true that York street appears upon the map of the commissioners, but it appears not as a street which the commissioners had laid out, but as a previously existing street.

The explanatory note upon the map shows that the color in which the street is delineated indicates it, not as a street laid out by the commissioners, but as a street already laid out. The common council were not, therefore, precluded from vacating it on the ground that the result of the work of the commissioners in laying out streets could not be altered by the common council except within the time mentioned in the repealing act of March, 1869.

This, I think, disposes of the objection that there was no power in the common council to vacate.

The next reason assigned is, that the prosecutrix, by the vacation of this street, is divested of property rights which cannot be taken without compensation, and that no compensation has been made.

It appears that when York street was laid out, one of the persons assessed for benefits was the prosecutrix. She then had, and still has, property abutting on York street.

It does not, however, abut upon that part of York street vacated by the questioned ordinances. The nearest line between her property and the vacated part of the street is from one thousand eight hundred to two thousand feet.

It is assumed by counsel for prosecutrix, that because the prosecutrix was assessed for a benefit resulting from the opening of this street peculiar to herself, that she got a vested right in the continued existence of the street, of which she could not be stripped without compensation.

But this, I think, is more plausible than substantial. While the right she got may have been of peculiar benefit to her property, yet it was a right which she shared with the public.

The privilege of using the street was shared by each member of the community.

It may not have been of the same value to each member of the community, but the right to use the street was in each

citizen the same. It was exclusively a public right, put under the control of the representatives of the public. It was subject to alteration or abolition when in the judgment of those to whom the public interests were confided those interests demanded such action.

The assessments of benefits is presumed to be based upon the recognized power of the state and its agencies to modify or destroy the improvement.

The attitude of those who have been assessed for peculiar benefits differs in no respect from that of any other citizen in regard to this control of the public over a public right.

The position of a citizen in respect to such public rights is entirely settled.

In *Smith* v. *City of Boston,* 7 *Cush.* 254, a petition was filed for an assessment of damages alleged to have been done to plaintiff by the discontinuance of a portion of Market street by order of the mayor and aldermen. The petitioner owned several lots on and near Market street, but not on that part discontinued. Shaw, C. J., remarked : " The damages complained of, though they may be greater in degree in consequence of the proximity of the petitioner's estates, does not differ in kind from that of any other member of the community who would have had occasion more or less frequently to pass over the discontinued highway."

In the case of *Coster* v. *The Mayor of Albany,* 43 *N. Y.* 399, the action was for the removal of part of a bridge.

The court remarked : " The bridge, so far as the plaintiffs were interested in it, was but a part of a public street or highway. * * * Assuming that the statute did not, by some particular provision or phraseology, provide for the payment of consequential damages, or such as may result to persons whose lands are not taken or immediately injured, the state would not have been liable for the damages claimed by the plaintiff as following from the removal of the bridge, nor is the city liable."

This was the view of the right of the public authorities to abandon public rights expressed by Van Fleet, V. C., in his

opinion in the case of *Dodge* v. *Pennsylvania R. R. Co.*, 16 *Stew. Eq.* 351, which case was affirmed by the Court of Errors for the reasons given in the court below. *S. C.*, 18 *Id.* 366.

The principle laid down by the cases already mentioned is sustained by an abundance of authority. *Chicago* v. *Union Building Assn.*, 102 *Ill.* 379; *McGee's Appeal*, 114 *Pa. St.* 470; *Ellsworth* v. *Chickasaw Co.*, 40 *Iowa* 571; *People* v. *Supervisors*, 20 *Mich.* 95; *Dill. Mun. Corp.* 666; *Lew. Em. Dom.* 134.

Nor do I find any substance in the point that the vacation was made to subserve a private interest.

It is true that the proceedings for vacation were taken immediately after a petition for such vacation had been presented by the trustees of the Trumbull estate.

The vacated portion of the street had been laid over the Trumbull lands. There appears to have been an opportunity to sell a tract of said land to a company which would locate extensive works upon it, and so increase the prosperity of that portion of the city.

The required piece of land could not have been obtained without a vacation of this part of York street. This was probably the principal inducement to the action of common council. But the motives which induce municipal proceedings of this kind are always of a mixed character.

Regard for private interests are necessarily intertwined with public interests. The size of lots for building purposes is a proper factor to be taken into consideration in the vacation, as well as in laying out or altering streets.

If the motive of a common council in exercising the power conferred upon it by the legislature can ever be questioned is doubtful.

If the courts can enter into the motives of the municipal legislature in respect to acts of this kind in any case, it must be one in which the public interests have been glaringly sacrificed to subserve private ends.

Nothing of this sort appears in this case. The vacated portion of the street runs through salt meadows and crosses an

unbridged creek, and there is not a house or building along the line of it.

Between the property of the prosecutrix and the vacated part of the street York street is crossed by Schiller street, which is open and built upon.

Under all the circumstances the action of common council is not properly the subject of a suspicion of being influenced by any considerations other than to conserve the best interests of the city.

The writ of *certiorari* must be dismissed.