# CITY OF DALLAS v. INGRAM. (No. 7568.)

(Court of Civil Appeals of Texas. San Antonio. May 5, 1926. Rehearing Denied May 26, 1926.)

**1. Municipal corporations ⚖➔703(1).**

City of Dallas has power, under charter, to provide that alley shall be used only by pedestrians, and to prohibit its use by vehicles.

**2. Municipal corporations ⚖➔122(2).**

Burden is on one attacking ordinance to show that, as applied to him, it is unreasonable, unfair, and oppressive.

**3. Municipal corporations ⚖➔63(2).**

Ordinance, enacted under charter power and police power, will not be declared void, unless clearly unreasonable and oppressive.

**4. Municipal corporations ⚖➔703(1)—Ordinance closing 9-foot alley to use of vehicles, after exclusive use by pedestrians since dedication, held not unreasonable.**

Ordinance of city of Dallas closing 9-foot alley, which for eight or nine years after dedication was used by no one but pedestrians, to use of vehicles, only recently attempted by abutting owner, *held* not shown clearly unreasonable and oppressive.

**5. Municipal corporations ⚖➔703(1)—Where, since dedication, narrow alley had been used by pedestrians only, ordinance prohibiting use by vehicles held not to change character.**

Ordinance prohibiting use of 9-foot alley by vehicles, not attempted until recently, having been used by pedestrians only since dedication, *held* not to change character of alley by making it private passageway.

Appeal from District Court, Dallas County; Claude M. McCallum, Judge.

Suit by W. C. Ingram, Jr., against the City of Dallas. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Lee Richardson, Ed Freeman, Jas. J. Collins, Allen Charlton, Hugh S. Grady, and H. P. Kucera, all of Dallas, for appellant.

Gresham, Willis & Freeman, and Alvin H. Lane, all of Dallas, for appellee.

FLY, C. J. This appeal is from an order granting an injunction against appellant, perpetually restraining it from interfering with appellee in the use of the alley in block 1631 of the city of Dallas, which runs between lots 10, 11, and 12, and between lots 28 and 29 in said block, and perpetually enjoining the city from enforcing an ordinance which prohibited the use of the alley for vehicles.

The ordinance named limited the use of the alley to pedestrians alone, and made it unlawful for any vehicle of any character to drive in said alley, and it was ordered that posts be so placed at the entrance of the alley as to prevent the entrance of vehicles in the same, and it was also made a misdemeanor to drive any character of vehicle into and through the alley. The ordinance was passed on March 25, 1925. The alley was dedicated to the public and accepted by the city in 1915, and, being only nine feet wide, was never used for vehicular traffic, but was constantly used by school children and other pedestrians of the general public. A sidewalk had been built on

one side of the alley. The alley is not straight, but conforms to the shape of block 3, across which it runs, between Oleander and Grand avenue, and connecting across Oleander avenue with another alley running through blocks 6 and 7, across Roscoe street to Fairview avenue.

Appellee bought lot 10 in block 3 in September, 1924, and there was on it at that time a "two-story, 25-foot brick store" fronting 25 feet on East Grand avenue, "and in the rear are two garage buildings, one with one stall and one with three stalls, for four cars." Appellee began the construction of a storehouse, with 18 feet front on Grand avenue, covering the remainder of lot 10, which lot has a front of 43 feet on Grand avenue. When appellee bought the lot, there was a sidewalk along his lot entirely through the alley, and there were poles in the alley which prevented its use for vehicles. From the time it was dedicated, for eight or nine years, it had been used as a passageway for pedestrians, and every one seemed to have acquiesced in such exclusive use until appellee concluded that he needed it for vehicular use in the latter part of 1924. An alley 12 feet in width runs along the rear of the lot owned by appellee.

[1] The charter of the city of Dallas was granted by an act of the Legislature in 1907, and by that charter its governing body is authorized "to lay out, establish, open, alter, widen, lower, raise, extend, grade, narrow, care for, pave, supervise, maintain and improve streets, alleys, sidewalks, squares, parks, public places and bridges, and to vacate and close the same; to sprinkle and care for the streets and to regulate the use thereof, * * *" That provision of the charter gives the city plenary and exclusive power over the streets and alleys and other public properties. It could not be broader or more unrestricted, and it carries the authority, not only to open, alter, widen, lower, raise, extend, and pave the streets and alleys, but "to close and vacate the same." The Legislature had lodged in it the powers granted by it to the city, and that grant clothed the city with the many enumerated powers over the streets and alleys. Acting under these broad charter powers, the city of Dallas has exercised the authority to provide that an alley under its control shall be used only by pedestrians, and prohibiting its use by automobiles. This it clearly had the authority under the charter to do. It is a power that is being exercised in various ways in every city where the population is dense and the streets crowded, and where regard for life and property require such regulation.

[2, 3] The ordinance being within the grant of power conferred on the municipality, and nothing unreasonable appearing on the face of the ordinance, it is presumed to be a reasonable exercise of power, and the burden rested upon appellee of affirmatively showing that the ordinance as applied to him is unreasonable, unfair, and oppressive. The city commission of Dallas has a wide discretion confided to it in the enactment of ordinances, and, when enacted under a charter power and under its police power, it will not be declared void, unless it appears on its face or from the facts to be clearly unreasonable and oppressive. City of Austin v. Austin City Cemetery Association, 87 Tex. 330, 28 S. W. 528, 47 Am. St. Rep. 114; Houston & T. C. R. Co. v. City of Dallas, 98 Tex. 396, 84 S. W. 648, 70 L. R. A. 850.

[4] There is nothing unreasonable on the face of the ordinance, and it cannot be declared to be unreasonable as a matter of law. The charter gives the city all the power assumed by it, and, unless the facts in their application show a case of unreasonableness, unfairness, or oppression towards appellee, they will not sustain the judgment of the court. Appellee bought the property described in his petition eight or nine years after the dedication of the alley was made, and after its intended use was apparent from the narrow width, and the use to which it was immediately put and which continued until appellee sought to divert its use to his own private purposes. The alley was only 9 feet wide, and it could not have been contemplated that it would be used for automobile or other vehicular travel. The public did not so construe the dedication, but built a passway or sidewalk on one side of the alley, and used the alley exclusively as a passageway for pedestrians. For years it was so used, and appellee knew that fact, and made his purchase of the lot with that knowledge. Not only was the alley an impracticable way for automobiles, but, as tending to show that it was not so intended by those who made the dedication, an alley 12 feet wide was run at right angles to the narrow alley, right at the rear of the lots facing on Grand avenue. The reasonableness of the ordinance cannot be tested by the fact that appellee has placed his garages so that he cannot get into them from the rear alley, nor from the fact that he built a house in the 18-foot passageway from Grand avenue to his garage. He deliberately made the changes after he secured the property, and now seeks to destroy an ordinance by showing the effect of the changes made by him since he got the property. He knew that pedestrians constantly used the alley, and that "it was a thoroughfare for pedestrians from Oleander to Grand avenue, and, as a matter of fact, if this were not so, the pedestrians would have to go quite a long distance around the block." And yet appellee insists that he has been deprived of his property, privileges, or immunities without the "due course of the law of the land," and that it is very unreasonable for a city to protect hundreds of its school children and

others in the use of an alley, which use had been fixed for a number of years, in order to relieve appellee from some little annoyance. No right attached to him in connection with the alley except to use it for the purposes for which it was dedicated, and as it had been used by the general public for years. As said by this court in Greene v. City of San Antonio (Tex. Civ. App.) 178 S. W. 6:

"In advocating the rights of the individual, the principle should always be kept in view that in any form of civilized society, and especially in a government founded upon the will of the majority, natural rights, the exercise of which is deleterious and harmful to the rights, comfort, and happiness of the majority, can and must be restrained or taken away. The price paid by every citizen for the right to enjoy the privileges and comforts of civilized life is the surrender of certain natural rights."

And, further, as said by this court:

"The validity of such regulations must be measured by the necessities of the occasion and the rights of the public. The regulation must be reasonable, but its reasonableness will be measured by public rights."

See, also, City of San Antonio v. Fetzer (Tex. Civ. App.) 241 S. W. 1034.

[5] In his brief appellee insists that the ordinance changes the character of the alley, and makes it a private passageway, but that is not the case. The alley has always been exclusively used by pedestrians, not as a private passageway, but a public passageway for all pedestrians. Appellee seeks to make it too dangerous for use by pedestrians, and yet admits that it is not fitted for a thoroughfare for vehicles. His contention would transform the alley into a private way, indeed, to be used by him alone.

The case of Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387, is invoked by appellee to sustain the judgment of the lower court, but the facts of that case are in no way similar to the facts in this case, except that an ordinance is being assailed in each case. In that case the invasion of a private right was presented, and the question was whether the private right should be sacrificed to public necessity. The court said:

"The police power is founded in public necessity, and only public necessity can justify its exercise."

It was held that no such public necessity was shown in that case. That is a debatable question, but, if the opinion be sound, it has, and can have, no effect in this case, which rests on its own facts, and must stand or fall by them. The facts in this case make a clear opening for the exercise of the police power in the protection of the public rights

of numbers of citizens of the city of Dallas, and show a palpable necessity for the passage of an ordinance in the interest of the public safety. The passage of the ordinance was a reasonable exercise of the charter powers of the city of Dallas.

The judgment is reversed and judgment here rendered that the injunction sought by appellee be denied, and that he pay all costs in this behalf expended.