## GILLESPIE v. FULLER CONST. CO.
### No. 10901.

Court of Civil Appeals of Texas. Dallas.
Nov. 18, 1933.

Rehearing Denied Jan. 6, 1934.

Wm. H. Clark, Jr., J. P. Rice, and Clark & Clark, all of Dallas, for plaintiff in error.

W. H. Graham, of Houston, for defendant in error.

Hugh S. Grady and H. P. Kucera, both of Dallas, for City of Dallas, amicus curiæ.

JONES, Chief Justice.

With a paving certificate as the basis, issued by the city of Dallas to the Fuller Construction Company, for paving constructed on Live Oak street in said city, such company instituted this suit in a district court of Dallas county and recovered from A. C. Gillespie, plaintiff in error, the sum of $2,012.58, with interest thereon from October 25, 1926, at the rate of 7 per cent. per annum, and the additional sum of $250 as a reasonable attorney's fee, together with foreclosure of the paving lien on plaintiff in error's real property abutting on Live Oak street. An appeal has been duly perfected to this court. The following are the facts:

On February 9, 1926, the city of Dallas, a municipal corporation, by resolution, duly passed and approved by the mayor, ordered the improvement of Live Oak street, a public street in said city, in the following manner: (a) That said street should be cut or filled so as to bring same to grade; and (b) that the street should be paved from curb to curb with one of three designated materials, and with concrete curbs or gutters installed on each side of the street, where adequate curbs and gutters were not then installed.

After the passage of the resolution, all of the necessary steps to carry into effect the order for paving Live Oak street and to fix a debt against the property owners whose property abutted on said street as well as a lien against the property to pay the cost of the paving was taken by the city in accordance with the provisions of the city charter. One of the materials, designated in the resolution that could be used for the paving of the street, was Uvalde rock asphalt, on a six-inch concrete base. The bid of appellee to construct the pavement out of such material was accepted, and the pavement was laid on Live Oak street by appellee, under the supervision of the city engineer and in accordance with the specifications and requirements of the paving contract entered into with the city of Dallas.

At the proper time in the proceedings for

the improvement of said street assessments were duly levied against the abutting property owners, in the manner provided by the Dallas city charter, and each property owner, including appellant, was duly notified in writing and through advertisement in a daily newspaper of such assessment, and also of the time and place for hearing protests by property owners. After this hearing, which closed May 12, 1926, an ordinance was duly passed fixing a personal debt against appellant in the sum of $2,012.58 for the paving of the 186 feet abutting on his property, and fixing a lien against such property to secure payment of same.

The paving certificate, issued by the city to appellee, conforms to the provisions of the city charter authorizing the issuance of such certificates, and contains all of the necessary recitals to make it, prima facie, a valid and subsisting claim against appellant and in favor of appellee. The certificate, among other things, provided for the discharge of the indebtedness by payment in six equal annual installments, but further provided that, if default be made in any of the installments, the holder of the certificate could declare all unpaid installments due. The indebtedness bore interest at the rate of 7 per cent. per annum. Appellant defaulted in the payment of the first and second installments, and appellee declared all installments due and instituted this suit before limitation had run on any installment.

Appellant became the owner of his property on Live Oak street in 1910. The city of Dallas duly caused a portion of said street to be improved with bitulithic pavement in 1912, levied an assessment against plaintiff in error for his proportionate costs of such paving, and fixed the same character of lien on the same property as that which defendant in error now claims for the amount assessed against plaintiff in error. Plaintiff in error paid this indebtedness, and the lien against the property was released. This paving was in good repair in February, 1926, at the time the paving in question was ordered, was adequate for any use of said street, and was in such condition of repair when defendant in error destroyed it for the purpose of laying the new pavement. There were only two city blocks, or relatively a small part of that portion of Live Oak street paved in 1926, that had been paved in 1912.

In 1926 the city of Dallas, in the exercise of its charter powers, widened Live Oak street by taking, through condemnation proceedings, from the property owners on the opposite side of the street from plaintiff in error's property a strip of land 10 feet wide. Plaintiff in error was not a party to the condemnation proceedings, for no part of his land was taken for such purpose, but he was assessed, on the ground of benefit to his property, the sum of $2,549.25, as his proportionate share in payment to the property owners whose property was actually taken, and this assessment was duly paid by plaintiff in error. The pavement of 1912 in front of plaintiff in error's property was 35 feet wide, and the crown of the street was fixed at said time along the center of this 35 feet. When the street was widened in 1925, there was left 10 feet on the opposite or north side of the street from plaintiff in error's property unpaved. The specifications prepared by the engineer for the 1926 pavement required pavement 45 feet wide in front of plaintiff in error's property, so as to include the 10 feet unpaved. The concrete gutter placed in front of plaintiff in error's property by the 1912 pavement was in good condition and adequate for its purpose.

The grade of the street was unchanged by the 1926 paving from the grade established in 1912. The city engineer directed the tearing up and destruction of the 1912 pavement and gutter in front of plaintiff in error's property, the laying of new pavement on the same grade of the street, and a new gutter in the same place of the old gutter. The grounds on which the city, through its engineer, seeks to justify the act of destroying the 1912 pavement and taxing plaintiff in error in the form of a special assessment for the new pavement is that, unless such repaving was done, the crown of the pavement, as fixed in 1912, would not be in the center of the widened street, would not conform to the crown of the new pavement as same had to be established on other portions of Live Oak street, and would thereby destroy the equal drainage on the sides of the street. No reason appears for the destruction of the old gutter. The destruction of the pavement and gutter in front of appellant's property was done over his protest.

Plaintiff in error, both in his pleading filed in his answer to defendant in error's suit and by assignments of error and propositions of law in his brief, contends that, by reason of the above-existing facts, he had such a property interest in the pavement of 1912 that it could not be taken or destroyed, except through the proper exercise of the powers of eminent domain resting in the city, and, as the city did not exercise such powers, but took and destroyed his property under its police or taxing powers, all of the proceedings as against him, from the adoption of the resolution to the attempted fixing of the debt and lien against him and his property, were void, and that he was not required to take any notice thereof.

Section 1 of article 10 of the Dallas City Charter defines the term "street improvements" to include "the improvement of any street, alley, avenue, highway, public place or square, or any portion thereof, within the city, by filling, grading, raising, macadamizing, re-macadamizing, paving, repairing, or otherwise improving the same, or by con-

struction, or reconstruction of sidewalks, curbs, gutters, or repairing the same, * * * and said terms shall also include any other street improvement of a public nature and for a public benefit."

Subdivision (b) of section 1 of article 10 of the Dallas City Charter vests in the board of commissioners powers to order the improvement of any public highway, or part thereof, in the city of Dallas, and describes the nature and extent of such improvement.

Subdivision (c) of section 1, supra, reads: "The Board of Commissioners shall have power to cause sidewalks, curbs and gutters to be constructed, reconstructed, or repaired, under the terms of this article and the various subdivisions thereof, either separately or together with other improvements; provided, that the cost of constructing, reconstructing or repairing sidewalks shall be borne entirely by the owners of the property abutting upon such sidewalks; and provided, that the right of the Board of Commissioners to order the construction, reconstruction or repair of such sidewalks, curbs and gutters under the terms of this article and the various subdivisions thereof, shall be exclusive of and in addition to the powers hereinafter in this charter conferred upon such Board of Commissioners to order such improvements."

The applicable portion of subdivision (j) of section 1, supra, reads: "At any time within ten days after the hearing herein provided for has been concluded, any person or persons having an interest in any property which may be subject to assessment under this Act, or otherwise having any financial interest, in such improvement or improvements, or in the manner in which the cost hereof is to be paid who may desire to contest on any ground the validity of any proceeding that may have been had with reference to the making of such improvements or the validity in whole or in part of any assessment or lien or personal liability fixed by said proceedings, may institute suit for that purpose in any court of competent jurisdiction. Any person who shall fail to institute such suit in said period of ten days, or who shall fail to diligently prosecute such suit in good faith to final judgment, shall be forever barred from making any such contest or defense in any other action and this estoppel shall bind their heirs, successors, administrators and assigns. The City of Dallas and the person or persons to whom the contract has been awarded shall be made defendants in such suit, and any other proper parties may be joined therein."

By proper pleading and appropriate assignments of error, plaintiff in error contends that, in so far as he and his property are concerned, the entire proceedings are void, including the city ordinance purporting to establish a valid claim against him for the cost of the pavement, and to fix a lien on his Live Oak street property is void for the reason that the pavement in front of his property, laid in 1912, was in good repair and met all requirements for traffic over the street, and that, having paid the special assessment against him for such pavement, he had acquired a proprietary right in such pavement that would forbid its being taken from him without due compensation; in other words, plaintiff in error contends that the city could only lawfully take and destroy such pavement for a public use, through the exercise of the right of eminent domain, under which he would have been allowed full compensation for his property right in the pavement. Plaintiff in error also claims that the proceedings of the governing body of the city of Dallas as to him are void, because the destruction of the old pavement and the laying of the new pavement, as ordered by the city act of the city of Dallas, and hence invalid as to him, and created neither a debt against of Dallas, was an unreasonable and arbitrary him or fixed a lien on his property.

Plaintiff in error also filed a cross-action against defendant in error for damages for the destruction of the old pavement in front of his property, on the ground that defendant in error is charged with notice of the limitations of the power of the city of Dallas, in respect to the right to destroy the old pavement, substitute therefor new pavement, and tax plaintiff in error for the new pavement; that, as defendant in error is charged with notice of such power, the fact that the pavement was destroyed under the direction of the city of Dallas, through its engineer as its duly authorized agent, constitutes no defense to plaintiff in error's cross-action.

It must be borne in mind that plaintiff in error's defense to defendant in error's suit on the said paving certificate is not based upon the provisions of subdivision (j) of section 1 of article 10 of the charter of the city of Dallas, for no suit was filed by plaintiff in error within the time limit allowed by such subdivision, but is based on the theory that the entire proceedings culminating in the attempt to create a valid indebtedness against him and to fix a valid lien against the property to secure such indebtedness are void, and hence the time limitation in said subdivision (j) does not apply to this suit.

The primary question for decision is, Did plaintiff in error have such a property interest in the pavement, laid in front of his property in 1912, as required the city of Dallas to exercise its right of eminent domain, before it could lawfully cause such pavement to be destroyed for the purpose of laying the new pavement? The determination of this question necessarily determines plaintiff in error's right to maintain the cross-action; for, if the city of Dallas had the right to destroy the 1912 pavement under its power and dominion over the public streets and alleys, within its corporate limits, then mani-

festly defendant in error could not be held in damages because of such destruction. Blair v. Waldo (Tex. Civ. App.) 245 S. W. 986; City of Huntsville y. McKay (Tex. Civ. App.) 286 S. W. 305.

A discussion of the primary question involved requires a review of the theory upon which the law rests, which authorizes the levying of special assessments against abutting property owners to pay the cost of street paving. In ordering a street paved, an incorporated city is not acting for the special benefit of abutting property owners, but is acting for the benefit of the public, who must use such street for the purposes of general traffic. Whether a public street should be paved in a city is a matter vested in the governing body of such city. In determining such matter, the city acts from the viewpoint of the traffic demands of the public. So, when the city of Dallas duly authorized the paving of Live Oak street, it determined that the public interest, in respect to the traffic and the use of said street, demanded that such improvement be made; likewise, when in 1912 the governing body of the city of Dallas duly authorized and carried out the paving of the two blocks of Live Oak street, on which plaintiff in error's property is situated, it thereby decreed that there was a public need for such improvement to facilitate traffic on said street. The resolution authorizing and directing the 1912 improvement did not exhaust the power vested in the city to make such improvement, for such power is a continuing power. Likewise, the resolution authorizing the instant pavement did not exhaust the power of the city in respect to such street improvement. By causing each of the pavements to be laid as public improvements, the city of Dallas in no way surrendered its control or dominion over Live Oak street.

What was the source of the funds for each pavement? This record discloses that, in each instance, the fund was raised by resort to the taxing power of the city, exercised in the form of special assessments against the abutting property owners. While this fund could not be diverted from the special use for which the tax levy was made, when collected, it became a public fund to be used for a public purpose, and not a private fund to be used by the city for the private benefit of the respective abutting property owners. In adopting such method to raise a public fund, for what was deemed a necessary public improvement, the city acted clearly within its delegated powers. This power of levying a special assessment for a public improvement restricts a city to make no levy in excess of the special benefits received by the abutting property owners from the street improvement. The theory of the law is that an abutting property owner, on the street on which the public improvement is made, receives a benefit to his property in excess of the benefit received by the public in general, and hence the law authorizes the city to levy a tax against an abutting property owner, not in excess of his benefits, for the payment of the improvement made. This is not a hardship to such property owner, but tends to place him on an equality with other property owners generally benefited by the improvement.

It necessarily follows that street improvements, made with public funds raised by means of special assessments, in no sense belong to the abutting property owner, but inhere to the street improved, and such street is subject to the same control and dominion of the city as was the case before the improvement was made. But it is argued that, as appellant's property was enhanced in value by reason of the special benefit it received from the 1912 improvement, and as he was presumably taxed to the full extent of this special benefit, he should not be deprived of such special benefit by the destruction of the very pavement for which he was specially taxed to pay, in order that he may be taxed again to secure special benefits to his property. Under the rule of law for determining the special benefit that appellant received from the last pavement, the special benefits, inhering in his property by reason of the 1912 pavement, are not lost to him, for, in considering the special benefits received from the last pavement, his property is considered as conditions existed just prior to the destruction of the old pavement. If the commissioners appointed by the city to assess the special benefit as a basis of taxes for the last paving failed to take into consideration this fact, then the law gives him relief, provided he files his suit within the limitation prescribed by said subdivision (j).

We therefore hold that plaintiff in error had no property interest in the 1912 pavement, and that the proceedings of the city of Dallas, in making the assessment and in issuing the certificate, are valid. San Antonio v. Mullaly, 11 Tex. Civ. App. 596, 33 S. W. 256; City of LaGrange v. Brown (Tex. Civ. App.) 161 S. W. 8; Williams v. City of Fort Smith, 165 Ark. 215, 263 S. W. 397; Adams v. Fisher, 63 Tex. 651; Elliott on Roads and Streets, vol. 1 (4th Ed.) § 603; McQuillan on Municipal Corporations, vol. 1, § 390.

Appellant further claims that the proceedings are void because, the 1912 paving in front of plaintiff in error's property being in good condition and ample to take care of the traffic on Live Oak street, the action of the city of Dallas, in ordering the destruction of this pavement and the repaving of said street was purely an arbitrary act, and hence an abuse of discretion. We cannot agree to this contention. The city of

Dallas, by its charter and by statutory provisions, is vested with the sole right of determining whether a street shall be paved, repaved, or otherwise improved, and, unless it clearly appears that there was an abuse of the discretion of the city in directing the repaving of the two blocks of Live Oak street in which plaintiff in error's property is situated, this court is not authorized to review the exercise of such discretion. The 1912 pavement was approximately fourteen years old at the time of its destruction; by reason of the widening of the street just preceding the last paving, the crown was 5 feet removed from the center of the street, and thereby interfered both with the proper drainage of the street and the proper control of the traffic over the street. These conditions presented a proper case for the exercise of governmental discretion, and this contention is overruled.

It necessarily follows that, in our opinion, the judgment of the lower court should be affirmed, and it is so ordered.

Affirmed.