**FARMERS & MERCHANTS COMPRESS & WAREHOUSE COMPANY, Appellant,**

v.

**CITY OF DALLAS, Appellee.**

No. 15651.

Court of Civil Appeals of Texas.

Dallas.

April 22, 1960.

Rehearing Denied May 20, 1960.

Locke, Purnell, Boren, Laney & Neely, Callaway, Reed, Kidwell & Brooks, and O. D. Montgomery, Dallas, for appellant.

H. P. Kucera, City Atty., N. Alex Bickley and Ted P. MacMaster, Asst. City Attys., Dallas, for appellee.

DIXON, Chief Justice

Appellant Farmers & Merchants Compress & Warehouse Company, a private corporation, sued appellee City of Dallas for damages alleged to have resulted from the closing of a part of Lamar Street which ran across a railroad crossing. This appeal is taken from a summary judgment that appellant take nothing by its suit.

### Appellant's Pleadings:

In its unsworn amended petition appellant in substance made these allegations:

1. On June 17, 1930 it became owner of a tract of land described by metes and bounds as being 870' x 672½' x 1042' x 717½' in dimensions. For many years improvements on the property have been used for the compression and storage of cotton.

2. At the time of the acquisition of said tract its east boundary abutted on the west line of an opened and dedicated street in the City of Dallas known as Cockrell Avenue; and appellant purchased its property with reference to Cockrell Avenue in reliance on the continued use of the street in going to and from its place of business.

3. Subsequent to appellant's acquisition of the property, the City of Dallas by condemnation, as shown by a judgment dated July 25, 1941, acquired a portion of appellant's land for the widening of Cockrell Avenue. The name of the thoroughfare was then changed to Lamar Street.

4. Thereafter on March 29, 1954 without notice to appellant the City Council passed an ordinance closing that part of Lamar Street which lay across the tracks of the G. C. & S. F. Ry. Co., which part of the street was located in the same block, City Block No. 1114, as appellant's property. Pursuant to said ordinance barricades were erected across Lamar Street at the north and south boundary lines of the railroad right-of-way, effectively blocking traffic to and from a part of appellant's property along and over Lamar Street toward the west.

5. As a result of the closing of Lamar Street a part of appellant's property was left in a cul de sac extending from an intersecting street, Grand Avenue, westward to the barricade at the railroad right-of-way, there being no intersecting street between Grand Avenue and the barricade. Grand Avenue comes into Lamar Street at a point about midway of appellant's property frontage on Lamar Street. As a consequence, from part of its property appellant and its customers can no longer travel west on Lamar Street to down town Dallas, but must travel a circuitous route eastward to Grand Avenue, thence north on Grand Avenue one block to Wall Street, and thence west on Wall Street to down town Dallas. Appellant sued for damages due to the diminished value of its property in the amount of $197,000.

6. In a trial amendment appellant alleged that for more than ten years prior

to its purchase of the property and up to the time of the widening of Lamar Street in 1931, its predecessor in title and other business concerns used a strip 25 or 30 feet wide, adjacent and parallel to the street car tracks, and adjacent and parallel to appellant's west property line up to the railroad crossing and across the railroad right-of-way as a means of ingress and egress from appellant's property; and by reason thereof appellant had acquired a right by prescription across the railroad right-of-way.

### Appellee's Pleadings:

In an unsworn motion to dismiss and an amended answer appellee, City of Dallas, made these allegations:

1. Appellant and its predecessors acquired title by deeds in which the property was described by metes and bounds only without reference to Lamar Street or any other Street, and without reference to any map or plat showing any streets; hence appellant did not acquire a private right or easement in Lamar Street.

2. Prior to appellant's acquisition of its property passage across the railroad right-of-way was permissive or by adverse use only, hence neither appellant nor its predecessors obtained a private easement across the railroad right-of-way.

3. At the time or prior to the time of the closing of Lamar Street across the railroad tracks the City constructed an extension street, Grand Avenue, leading from Lamar Street directly in front of appellant's property, in a northerly direction to Wall Street, a parallel street to Lamar Street, hence the closing of Lamar Street at the railroad right-of-way did not result in Lamar Street being a cul de sac.

4. The City closed Lamar Street where it crosses the railroad tracks because it constituted a hazard to life and property to allow the street to remain open at that point. In lieu of said crossing an underpass, under the railroad tracks, was constructed on Wall Street running parallel to Lamar Street one block away. Under the circumstances the closing of part of Lamar Street at the railroad crossing was a valid exercise of police power, and was not a taking or damaging of appellant's property within the meaning of Art. 1, § 17 of the Constitution of the State of Texas, Vernon's Ann.St.

5. In support of its contention the City pled appellant's chain of title to its property beginning with October 24, 1879 and continuing to the present time, attaching as exhibits copies of the successive deeds and other recorded instruments.

6. In a trial amendment the City pled that in 1942 the construction of Central Expressway in Dallas required the removal and relocation of railroad tracks of the T. & N. O. Ry. Track facilities for the T. & N. O. Railroad were provided by building additional tracks parallel to the G. C. S. F. Ry. tracks, thus causing four sets of tracks instead of three sets at the railroad crossing at Lamar Street. As a result daily train movements increased from 68 to 80 in number each day. Underpasses had been built across these tracks at nearby intersections. The Lamar Street crossing was then closed in the interest of public safety pursuant in exercise of the City's police power.

### Affidavits:

The City's motion for summary judgment alleged that it was based on the pleadings of appellant and appellee, above summarized, and on affidavits of W. H. Burke and Squire Haskins.

The affidavit of W. H. Burke, Engineer of Surveys and Records of the City of Dallas, abounds in legal conclusions. But it does refer to and have attached as exhibits a number of recorded deeds and other recorded instruments which are material to this controversy and which we therefore summarize as follows:

1. Appellant's property was once a part of a tract of farming and pasture land ac--

quired in the year 1879 by W. C. Young and occupied as his homestead.

. 2. In the year 1881 a predecessor of the G. C. & S. F. Ry. Co. secured a strip of land 200 feet wide for right-of-way purposes through Young's land.

3. In 1888 Young conveyed to Dallas Rapid Transit Railway Company a strip of land 30 feet wide off the northern portion of his property for street car right-of-way purposes.

4. In 1895 Young conveyed the identical property now owned by appellant to Charles Emile Allgeyer. Thereafter by warranty deeds the property was conveyed to two other grantees before it was acquired June 17, 1930 by appellant. In each deed the property is described by metes and bounds. None of the deeds contains any reference to Lamar Street, or its alleged predecessor, Cockrell Avenue, or to any map or plat showing any streets.

5. In the deed record is a copy of an affidavit made by W. C. Young in 1897 to the effect that he had never cut up the tract of land into lots and blocks and had never dedicated streets through it.

6. Prior to the time appellant acquired the property the City of Dallas on February 15, 1929 initiated proceedings for the opening and widening of Lamar Street. In connection with such street improvements these proceedings were had:

(a) By condemnation the City on July 21, 1931 obtained a strip 80 feet wide across the G. C. & S. F. Ry. Company's right-of-way for street purposes.

(b) On July 25, 1931 the City obtained by condemnation a strip 50 feet wide off the north side of the property now owned by appellant, which 50 foot strip adjoined the 30 foot right-of-way of Dallas Rapid Transit Ry. Company. The condemnation judgment required the City to pay to Shippers Compress & Warehouse Company, appellant's immediate predecessor in title, the sum of $19,068.68 for said 50 foot strip.

(c) On August 1, 1932 the City obtained by condemnation for street purposes, the 30 foot strip of land which had been conveyed by W. C. Young to the Dallas Rapid Transit Ry. Co. in 1888 for street railway purposes.

7. The three condemnations above described enabled the City to extend Lamar Street as an 80-foot thoroughfare across the G. C. & S. F. Ry. Company's tracks.

8. In 1954 by ordinance the City ordered the crossing over the G. C. & S. F. Ry. Company's tracks to be closed and barricaded.

Burke's affidavit also alleges that at the time of the acquisition of the property by appellant Cockrell Avenue extended only to the northwest right-of-way line of the G. C. & S. F. Ry. Company's right-of-way, (not across the tracks to appellant's property); that there was no dedicated street adjacent to or abutting upon the property now owned by appellant; and that Lamar Street was opened, widened and extended subsequent to appellant's acquisition of the property, as shown by the condemnation proceedings hereinbefore described.

The affidavit of Squire Haskins, a commercial photographer, has attached to it an aerial photograph made April 3, 1956, of the properties showing streets and railroad tracks, which photograph, affiant says, shows the properties as they were when the barricades were erected at the railroad crossing.

Appellee filed only one affidavit in answer to appellant's motion for summary judgment. This was an affidavit by O. D. Montgomery, one of the attorneys for appellant. Montgomery stated that by the condemnation judgment dated May 12, 1881 the railroad acquired an easement across the land of W. C. Young, which was the only right or title it could acquire under Art. 6339, Title 112, Revised Civil Statutes of Texas, enacted in 1861; consequently the City acquired only an easement when it acquired rights by condemnation for Lamar

Street across the railroad right-of-way. He also stated that by more than 20 years use after Lamar Street was widened in 1931 appellant had by prescription acquired a private legal right to use Lamar Street where it crosses the railroad tracks. It will be noted that Montgomery's affidavit also abounds in legal conclusions.

Stipulation of Facts:

The parties stipulated that (1) in 1882 the G. C. & S. F. Ry. Company acquired all property of its predecessors including right-of-way over W. C. Young's land; (2) on February 11, 1931 the City levied a special benefit assessment against appellant in the amount of $17,524 in connection with the opening, widening and extending of Lamar Street which improvement included the railroad crossing; and (3) on January 25, 1933 the City levied an assessment against appellant of $5,171.62 for the cost of paving and improving Lamar Street.

Opinion:

In its one point on appeal appellant asserts that the facts alleged by appellant, and uncontroverted by competent admissible evidence, expressed a cause of action for damages against appellee.

■ In weighing in the facts of this case it must be borne in mind that there are two distinct kinds of rights in City streets; (1) a public right which one enjoys in common with all citizens; and (2) a private right which under some circumstances may be acquired by adjacent or abutting property owners. It is only the loss or curtailment of a private right which will support a property owner's suit for damages against a city for the closing or obstructing of a street. Eidelbach et al. v. Davis et al., Tex.Civ.App., 99 S.W.2d 1067; 64 C.J.S. Municipal Corporations § 1701, p. 96.

Appellant contends that a right to damages inures to it in this case because the

closing of Lamar Street at the railroad crossing destroyed its private right to have Lamar Street kept open, not only in front of its property, but at least to the next intersecting street in both directions.

■ In pondering this question we shall not give consideration to the legal conclusions which are to be found in appellant's one affidavit and in appellee's two affidavits. Quarles v. State Bar of Texas et al., Tex.Civ.App., 316 S.W.2d 797; Bliss v. City of Fort Worth, Tex.Civ. App., 288 S.W.2d 558.

Considering then only the undisputed facts established by the pleadings, the affidavits and the stipulation we have concluded that appellant had no private right in and over the railroad crossing on Lamar Street, consequently, as a matter of law, is not entitled to damages because of the closing of the street at that point.

Burke in his affidavit stated definitely that at the time appellant acquired its property Cockrell Street came only to the railroad's northwest right-of-way line, which is the far side of the right-of-way from appellant's property. This means that Cockrell Street did not extend across the railroad right-of-way. Appellant did not file an affidavit controverting Burke's statement.

In its unsworn trial amendment appellant alleged that for more than ten years prior to the purchase of its property and up to the widening of Lamar Street in 1931 its predecessors in title, and other business concerns used a strip of land up to and across the railroad right-of-way, by reason of which appellant had acquired a right-of-way by prescription across the right-of-way.

■ The facts alleged by appellant in its trial amendment even if accepted as true, do not establish any private prescription right in appellant to a passage to and fro across the railroad right-of-way. To

establish such a right the use must have been open, notorious, adverse, exclusive, and uninterrupted for the necessary period of time. Appellant's own pleadings are to the effect that others besides appellant used the passage across the tracks, hence the element of exclusiveness of use is lacking. Further if the railroad continued to use its tracks at the crossing and there cannot be any doubt that it did, such continued use by the railroad as owner of the easement would also negative appellant's claim of a prescriptive right. Othen v. Rosier et al., 148 Tex. 485, 226 S.W.2d 622; Gill v. Pringle, Tex.Civ.App., 224 S.W.2d 525; Texas & N. O. Ry. Co. v. Harvey, Tex.Civ.App., 146 S.W.2d 227; Sassman v. Collins et al., 53 Tex.Civ.App. 71, 115 S.W. 337.

■ After the condemnation proceedings of 1931 and the subsequent opening and widening of Lamar Street, appellant could not acquire private prescriptive right to use of the dedicated street, as claimed by Montgomery in his affidavit. Art. 5517, Vernon's Ann.Civ.St.

Appellant has been at great pains to assert its private rights in that part of Lamar Street which runs parallel to and directly in front of appellant's property. That part of Lamar Street was not closed by the City Ordinance. So far as the record shows it is still open and is still in use by appellant and the public in general. The City closed only that part of Lamar Street which lay across the railroad right-of-way. However in view of appellant's contention we must discuss that phase of the controversy.

Burke in his affidavit swears that there was not a dedicated street running in front of appellant's property prior to the condemnation proceedings of 1931 when Lamar Street was opened and widened by the City. Appellant apparently accepts this allegation as a statement of fact. If so it is conclusive, because appellant has not controverted it by affidavit. But Burke's statement that there was not a *dedicated*

street seems to us to be a legal conclusion, consequently we have not considered such statement as a basis for our decision.

■ It is our opinion that even if Lamar Street was a dedicated street prior to the time appellant acquired its property appellant acquired no private right in said street as distinguished from the public right enjoyed by the public at large. Attached to Burke's affidavit are copies of the warranty deeds constituting the chain of title to the property from appellant back to W. C. Young. In every deed the property is described by metes and bounds only. In no instance is there any reference to streets. These deeds are evidence that neither appellant nor its predecessors bought with reference to any dedicated street. Since the record shows that appellant did not purchase with reference to any street, it did not acquire any private rights to any street. Lee v. City of Stratford, 125 Tex. 179, 81 S.W.2d 1003; Hartwell Iron Works v. Missouri-Kansas-Texas R. Co. of Texas, Tex.Civ.App., 56 S.W.2d 922.

■ Appellant also claims in the alternative that if there was no dedicated street abutting the property, it acquired prescriptive rights to a passageway which ran parallel to the street car right-of-way and which was then known as Cockrell Avenue.

We are unable to agree. The deeds show, and it is undisputed, that if such an undedicated road ran beside the street car right-of-way, it lay on the land of appellant and appellant's predecessors in the title. Certainly appellant and its predecessors in title could not hold adversely to themselves. Their use of the alleged road on their own land could not give rise to any prescriptive rights.

■ Appellant further claims that regardless of what private rights, if any, it had to Lamar Street prior to the opening and widening of the street in 1931, it acquired private rights to the street following

the condemnation of property and the official opening in 1931. This is especially true, says appellant, since appellant was assessed and paid said assessments for benefits resulting from the street opening. The weight of authority is contrary to appellant's contention. Gillespie v. Fuller Construction Co., Tex.Civ.App., 66 S.W.2d 798; City of Chicago et al. v. Union Bldg. Ass'n, 102 Ill. 379, 40 Am.Rep. 598; State v. City of Elizabeth, 54 N.J.L. 462, 24 A. 495; 2 Nichols Eminent Domain, 3rd Ed. § 6.34.

Furthermore the particular circumstances of this case seem to us to negative appellant's claim. By its condemnation judgment of July 25, 1931 the City acquired more than a mere easement to a 50 foot strip off appellant's property, which strip became part of the Street. It acquired title to the strip as is shown by the judgment itself: " * * * the title to the above described land be, and the same is hereby vested in the City of Dallas * * *." Appellant's predecessor in title was paid the sum of $19,068.68, the judgment recited that "such payment be and it is hereby adjudged to be in *full compensation* for the land condemned together with all improvements thereon and *appurtenances thereto* * * *." (Emphasis ours).

■ We think that the City bought and paid for appellant's land and appurtenances thereto, which included whatever private rights to the land appellant might claim. Miller v. Railroad Commission of Texas, Tex.Civ.App., 185 S.W.2d 223. Appellant's predecessors in title and therefore appellant will not be heard to say now that they did not assert all of their rights in the condemnation proceeding and would like to assert them now. Union Electric Co. v. Levin et al., Mo.App., 304 S.W.2d 478; Jackson v. City of Abilene, Tex.Civ. App., 281 S.W.2d 767; Gillespie v. Fuller Construction Co., Tex.Civ.App., 66 S.W.2d 798; Strickland v. City of Friona, Tex. Civ.App., 294 S.W.2d 254.

■ Finally we are of the opinion that the closing of the railroad crossing for street purposes was a valid exercise of its police power by the City of Dallas. Newly constructed underpasses on nearby streets running parallel to Lamar Street afforded safe passage across and under the railroad tracks. By closing the Lamar Street crossing the City eliminated a situation which it found to be hazardous. This was a proper exercise of the police power, and did not give rise to liability for diminished value of nearby property. City of El Paso v. Sandfelder, Tex.Civ.App., 118 S.W.2d 950; Sitterle et al. v. Victoria Cold Storage Co., Tex.Civ.App., 33 S.W.2d 546; City of Dallas v. Ingram, Tex.Civ.App., 284 S.W. 345.

Appellant attacks the sufficiency of the affidavit of W. H. Burke as being incompetent under Rule 166–A, Texas Rules of Civil Procedure, to serve as a predicate for summary judgment. The affidavit is drawn up in the form required by the Rule. Burke under oath states that he is Engineer of Surveys and Records of the City of Dallas. He further states under oath that he has personal knowledge of every statement in his affidavit and is fully competent to testify as to matters therein stated.

■ It is true, as appellant points out, that the copies of recorded deeds and other instruments attached as exhibits to Burke's affidavit are not certified copies. However this objection was not raised in the trial court. It is raised for the first time on this appeal. It comes too late. Lobit v. Crouch, Tex.Civ.App., 293 S.W.2d 110.

■ Furthermore appellant's own pleadings together with the affidavit of O. D. Montgomery refer to and describe seven of the eleven instruments attached as exhibits to Burke's affidavit, including appellant's chain of title from W. C. Young to appellant. There is no need to prove facts admitted in pleadings of all parties to a

suit. Caulk v. Anderson et al., 120 Tex. 253, 37 S.W.2d 1008.

Appellant's point on appeal is overruled.

The judgment of the trial court is affirmed.