Lennox **JENKINS**, Appellant,

v.

**HENRY C. BECK COMPANY,** Appellee.

No. 17253.

Court of Civil Appeals of Texas.

Dallas.

March 28, 1969.

Rehearing Denied April 25, 1969.

Ronald A. Dubner, and Christopher M. Weil, Dallas, for appellant.

Larry M. Lesh, of Locke, Purnell, Boren, Laney & Neely, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

Lennox Jenkins brought this suit against Henry C. Beck Company (hereinafter called Beck), and other named defendants, seeking to recover money alleged to be due him pursuant to a subcontract with Beck. The other named defendants were dismissed by agreement. The trial court sustained the motion for summary judgment filed by Beck and rendered a take nothing judgment against Jenkins.

The facts presented to the court on the motion for summary judgment are virtually without dispute. On March 31, 1966 Jenkins, as subcontractor, and Beck as general contractor, entered into a written agreement whereby Jenkins agreed to do certain interior work on a construction project in Dallas known as the Bank of Services and High Rise, Inc., pursuant to specifications supplied by the contracting architects. Originally the total contract price was $180,945.73. Three change orders, authorized by the agreement, increased the total by more than twenty thousand dollars. The contract provided for payments to be made by the general contractor to the subcontractor periodically, less statutory retainage. The record reveals that from time to time Jenkins would submit to Beck his "payment request" in which the total amount claimed to be due, less retainage, would be set forth. Responding to such "payment request" Beck would issue its check. Attached to each of Beck's checks was a

voucher. On the right-hand side of each voucher, following the number of the check, appeared this statement: "This check is tendered in full payment of items listed below." Below this statement was the notation of the amount of "This Payment", "Less Charges" and "Plus Credits" with the "Amount this Check" set forth at the bottom. In the three instances made the basis of Jenkins' cause of action the check voucher contained the amount of payment and then recited charges which resulted in the amount of the check being delivered, which was a lesser amount than that requested. The total amount of charges set forth in the three checks in dispute was $5,315.14. Jenkins admitted that he was aware of the fact that the total amount of the checks did not correspond to the amount demanded by him, and that he was aware of the accounting reflected by the check vouchers, but contended that, based on custom and usage, he thought that these discrepancies would be resolved in a final accounting at a later date. Jenkins admitted that he cashed all three of the disputed checks with the accounting as reflected on the vouchers. Jenkins says that he did not authorize or sanction the back charges which were deducted from the payments demanded.

Jenkins' action was to recover what he considered to be the remainder of the unpaid balance due under the contract in the total sum of $16,855.34, together with attorney's fees. Beck tendered into court the sum of $10,953.11, which was received and accepted by Jenkins, leaving the total of $5,902.23 in dispute.

■ In his first point of error appellant Jenkins contends that the trial court committed error in granting summary judgment against him because the affidavit of Quakenbush, a witness for Beck, was fatally defective and could not therefore support a summary judgment. The record reveals that the affidavit of E. W. Quakenbush, treasurer of Beck, was offered in support of the motion for summary judgment. In his affidavit Quakenbush, in his capacity as treasurer, identifies as true and correct copies of certain checks, vouchers and requests for payment and invoices representing payments made by Beck to Jenkins for the work involved in carrying out the contract. He further stated in his affidavit that the checks in question, bearing the notations shown, were accepted and cashed by Jenkins. He further stated that it was never the practice of Beck to make final adjustments and authorization for back charges upon final settlement under its subcontracts. He said the practice of Beck has always been to make adjustments for all back charges at the time periodic payments are made, communicating to the subcontractor at the time of each payment an itemization of the back charges for which the adjustments are made. He stated that this practice was followed in connection with the payments made to Jenkins as represented by the exhibits attached to his affidavit.

Appellant points to the fact that Quakenbush's affidavit does not comply with Rule 166–A(e), Vernon's Texas Rules of Civil Procedure, which states that: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

While Quakenbush's affidavit does not contain the specific words as set forth in the rule relied upon by appellant, we overrule appellant's contention. The prime reason for doing so is the fact that appellant did not offer any objection to the form and sufficiency of Quakenbush's affidavit in the trial court. Even assuming that the affidavit of Quakenbush is technically insufficient had proper objection or exception been made thereto in the trial court appellee would have had the right to request leave to amend or supplement the affidavit. We hold, therefore, that absent proper exception in the trial court appellant's complaint may not be presented for the first time on appeal. This is more es-

pecially true when it fairly appears from the record here that there is no genuine issue as to any material fact and that the appellee is entitled to judgment as a matter of law. Youngstown Sheet & Tube Co. v. Penn, 363 S.W.2d 230 (Tex.Sup.1962); Farmers & Merchants Compress & Warehouse Co. v. City of Dallas, 335 S.W.2d 854 (Tex.Civ.App., Dallas 1960, writ ref'd n. r. e.); Lobit v. Crouch, 293 S.W.2d 110 (Tex.Civ.App., Austin 1956, writ ref'd n. r. e.); De La Garza v. Ryals, 239 S.W.2d 854 (Tex.Civ.App., Fort Worth 1951, writ ref'd n. r. e.); Hall v. Fowler, 389 S.W.2d 730 (Tex.Civ.App., Dallas 1965, no writ); and Starr v. Koppers Company, 398 S.W. 2d 827 (Tex.Civ.App., San Antonio 1965, writ ref'd n. r. e.).

■ Moreover, even assuming the technical omission of the words contained in Quakenbush's affidavit, yet there is an additional reason for denying appellant's point. Appellant, in his own pleadings, alleges that appellant had received from appellee periodic payments showing deductions for back charges. Quakenbush, in his affidavit, does nothing more than admit the very facts as pleaded by appellant insofar as they relate to the instruments themselves. Accordingly, insofar as Quakenbush's affidavit relates to the written documents pled by appellant we find that any insufficiency in the affidavit is supplied by appellant's own pleadings. Ormsby v. Ratcliffe, 36 S.W.2d 1005 (Tex.Comm'n App. 1931); and Southern Ins. Co. v. Federal Service Finance Corp., 370 S.W.2d 24 (Tex. Civ.App., Austin 1963).

We turn now to a consideration of what appears to be appellant's chief contention, as presented in his second point of error, to the effect that the summary judgment pleadings and affidavits present a genuine issue as to material facts whether the necessary requisites for an accord and satisfaction existed. Appellee, by its motion for summary judgment, asserted that appellant's unconditional acceptance of each of appellee's checks effected an accord and satisfaction as to each of appellant's claims for payment. By this point of error appellant takes the position that an accord and satisfaction was not created because (1) the payments accepted by appellant were partial payments on liquidated and undisputed claims; and (2) appellant understood, because of his construction of the subcontract and his understanding of the custom and practice in the industry, that adjustments in the contract price due to faulty workmanship (which constituted the amount of offset claimed by appellee) would be deferred until the time of final payment.

As to appellant's first contention the parties are in agreement that the law establishing the essential elements of accord and satisfaction is correctly set forth in Dickson v. Stockman, 411 S.W.2d 610 (Tex.Civ.App., Texarkana 1966, writ ref'd n. r. e.), citing 1 Tex.Jur.2d, Accord and Satisfaction, § 30, p. 228, as follows:

"A valid accord and satisfaction of a money demand may be based on payment of an amount less than the creditor contends is due, or which may be actually due, where the claim is unliquidated, or where there is a bona fide dispute between the parties as to liability on a liquidated claim. The creditor is bound by such an accord and satisfaction of a disputed money claim, though his acceptance was under protest. This rule, or, as it has been characterized, this exception to the general rule that part payment will not extinguish a liquidated demand, applies though the debt is evidenced by a note, or by a judgment.

"The settlement of an unliquidated claim or of a liquidated claim that has been disputed in good faith is of itself a sufficient consideration to support an agreement of accord. In this situation, the courts will not inquire into the adequacy of the payment made on a money demand. * * *"

■ Appellant earnestly contends that his claims were for liquidated amounts be-

cause there was an agreed contract price with certain change orders setting forth increases in the price so that the parties could mathematically derive the figure owed by Beck to Jenkins by totaling the additional increments of labor and materials. We cannot accept appellant's argument. The fact that a debt is evidenced by an express written contract does not necessarily in every case make the claim a liquidated one, or preclude an accord and satisfaction by partial payment. For example, the obligor may insist that he is entitled to offset or counter demands or that he has paid more upon the debt than he is obligated to pay, and in either event he could successfully contend that the claim was unliquidated. 1 C.J.S. Accord and Satisfaction § 32, pp. 518–519; Bingham v. Browning, 197 Ill. 122, 64 N.E. 317 (1902).

■ The rule relating to a disputed claim or an unliquidated demand is aptly stated in 6 Corbin, Contracts, 118, as follows: "For there to be a disputed claim, 'There must be accompanying expressions sufficient to make * * * it unreasonable for him not to understand, that the performance is offered to him as full satisfaction of his claim and not otherwise.' "

■ When we apply this rule to the facts as revealed by this record appellant's contention concerning liquidated amounts becomes untenable. In each of the instances of periodic payments by Beck to Jenkins same was made in response to Jenkins' request for payment in a definite amount. In each instance the check tendered to Jenkins revealed an accounting by which Beck acknowledged the amount of money demanded by Jenkins but then offset such amount with charges and then computed the amount paid by the check which recited in unambiguous terms: "This check is tendered in full payment of items listed below." The plain and express provisions contained on the check vouchers were clearly sufficient to make it apparent to appellant that appellee's checks were not tendered in full payment of appellant's

claims as originally presented but for different amounts as contended for by appellee. In each instance appellee asserted its right to deduct back charges so that the periodic claims made by appellant were unliquidated and disputed and, hence, subject to accord and satisfaction. Dickson v. Stockman, supra; Grindstaff v. North Richland Hills Corporation No. 2, 343 S. W.2d 742 (Tex.Civ.App., Fort Worth 1961, writ ref'd n. r. e.).

The record here presented reveals, as a matter of law, that appellee did not defer its right to adjustment of questionable claims until the "time of final payment," as contended by appellant. This is evident because appellee, in each instance, clearly asserted its right of adjustment by deductions from appellant's claim for periodic payment. 4 A.L.R. 474; 53 A.L.R. 768.

Appellant's second contention relating to his alleged understanding of the custom and practice in the industry concerning time for adjustments in contract prices due to faulty workmanship cannot be approved. Our Supreme Court in the recent case of Neeley v. Southwestern Investment Co., 430 S.W.2d 465 (1968) has held that the act of a creditor in accepting checks tendered in full payment of unliquidated and disputed claims effects an accord and satisfaction of such claims, irrespective of the creditor's mental attitude at the time of such acceptance. See also Industrial Life Ins. Co. v. Finley, 382 S.W.2d 100 (Tex. Sup. 1964); Root & Fehl v. Murray Tool Co., 26 S.W.2d 189, 75 A.L.R. 902 (Tex. Comm'n App. 1930); and Robertson v. National Spiritualists' Ass'n, 25 S.W.2d 889 (Tex.Civ.App., Dallas 1929).

As the Supreme Court in Industrial Life Ins. Co. v. Finley, supra, pointed out, the various possible constructions and positions of the parties, relating to the contract, are relevant only in the establishment of the fact that there existed a bona fide dispute between the parties. The court pointed out that accord and satisfaction is "a new contract, express or implied, in which the

parties agree to the discharge of the existing obligation by means of the lesser payment tendered and accepted * * *." The court also said, quoting from Buford v. Inge Construction Co., 279 S.W. 513 (Tex.Civ.App., Dallas 1925, no writ):

"When appellee received this check and explanatory letter, it was given the choice, either to accept the check as full payment of its debt, or to return same, unaccepted, and hold appellant for its full claim. When appellee's manager chose the former course, and accepted the money represented by the check, he thereby took said money under the sole condition on which it was tendered, unaffected by the mental attitude of its said manager in reference to whether it was accepted as full and complete payment of the debt. Such mental attitude cannot control the effect of the said act. We therefore hold that the undisputed evidence in this case shows that there was a valid accord and satisfaction of this debt, and that same is a bar to the claim asserted by appellee in this suit."

When applied to the facts apparent in this record the rule clearly demonstrates that on each of the occasions when appellee made the payments, which were accepted by appellant, there was a new contract in which appellant's claims were discharged by the tender and acceptance of lesser sums. Appellant's mental attitude concerning his interpretation of the contract could not in any way affect the new contract. Indeed, the custom and practice urged by appellant is plainly at variance with the contracts created by the accord and satisfaction of appellant's claims. In Republic Nat. Bank of Dallas v. National Bankers Life Ins. Co., 427 S.W.2d 76, 80 (Tex.Civ.App., Dallas 1968), we held that usage or custom cannot operate to vary or contradict the terms of a plain and unambiguous contract, either expressly or by implication.

We have carefully reviewed this record in the light of the well established rules governing judicial review of summary judgments and, having done so, we conclude that appellee has sustained its burden of proof by establishing by competent summary judgment evidence that appellant's claims are barred by accord and satisfaction so that appellant may not recover, as a matter of law.

Appellant's points are therefore overruled, and the judgment of the trial court is affirmed.